JOHN ATALLAH, CA Bar No. 294116
jatallah@foley.com
FOLEY & LARDNER LLP
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

IRINA KASHCHEYEVA, admitted *pro hac vice*
ikashcheyeva@foley.com
FOLEY & LARDNER LLP
500 WOODWARD AVENUE, SUITE 2700
DETROIT, MI 48226-3489
TELEPHONE: 313.234.7100
FACSIMILE: 313.234.2800

Attorneys For Defendant
MAXIMUS EDUCATION, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALINA ECKFELDT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE,<br><br>*Defendant.* | Case No. 4:25-cv-10217-JST<br><br>**MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Jon S. Tigar<br><br>Date: June 4, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 6 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 4, 2026, or as soon thereafter as the matter may be heard before the Honorable Jon Tigar, United States District Court Judge, in Courtroom 6, 2nd Floor of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE ("Aidvantage" or "Defendant"), by and through its undersigned counsel, will move to dismiss certain claims asserted by Plaintiff Malina Eckfeldt, individually and on behalf of all other similarly situated.

Defendant's Motion is brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction and that all causes of action of this Plaintiff's First Amended Complaint ("Complaint" or "FAC") brought against Aidvantage (*i.e.*, the First, Second, Third, and Fourth Causes of Action) fail to state a claim for which relief may be granted against Aidvantage. This Motion is based upon the accompanying Memorandum of Points and Authorities, the documentation on file, and such other argument of counsel as the Court may wish to consider.

Dated: March 25, 2026

**FOLEY & LARDNER LLP**

*/s/ John Atallah*
John Atallah
Irina Kashcheyeva
(admitted *pro hac vice)*
Charles W. Niemann
(*pro hac vice forthcoming)*
Attorneys For Defendant
MAXIMUS EDUCATION, LLC
D/B/A AIDVANTAGE

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 5

IV. PLAINTIFF LACKS ARTICLE III STANDING. ..... 6

A. PLAINTIFF FAILS TO PLEAD ACTUAL INJURY-IN-FACT. ..... 6

B. PLAINTIFF'S INJURY, IF ANY, IS NOT FAIRLY TRACEABLE TO AIDVANTAGE. ..... 9

V. PLAINTIFF'S CLAIMS WARRANT DISMISSAL ON 12(B)(6) GROUNDS ..... 10

A. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ECPA. ..... 10

1. Plaintiff Fails to Allege Disclosure of "Contents" of Her Interactions. ..... 10

2. Plaintiff Has Not Adequately Alleged "Interception." ..... 11

3. Aidvantage Is Not Liable Because It Was a Party to Communications, and Plaintiff Cannot Establish Crime-Tort Exception. ..... 13

B. PLAINTIFF FAILS TO STATE A CLAIM UNDER CIPA. ..... 15

1. Aidvantage Cannot be Held Liable for Eavesdropping on its Own Conversations and Did Not "Aid and Abet" Any Violation of §631. ..... 16

2. Plaintiff Has Not Plausibly Alleged That Aidvantage "Read or Learned" the "Contents or Meaning" of Her Communications While They Were in Transit. ..... 17

3. Aidvantage Cannot Be Liable Under § 632(a) for Eavesdropping on Its Own Communications. ..... 18

C. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA CONSTITUTION. ..... 19

1. Plaintiff Fails to Allege Facts to Demonstrate She Maintained a Reasonable Expectation of Privacy in Disclosed Information. ..... 20

2. Plaintiff Fails to Allege Serious, Egregious or Highly Offensive Breach of Social Norms. ..... 21

VI. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 6

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ... 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 9

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 22

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ... 11

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ... 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 10

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (2025) ... 15, 18

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. Sept. 7, 2023) ... 10

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ... 14, 21

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ... 12

*Geo Grp., Inc. v. Menocal*,
2026 WL 513536 (U.S. Feb. 25, 2026) ... 1

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025) .......... 14, 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 11, 21

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024).......... 16, 17

*In re BetterHelp, Inc. Data Disclosure Cases*,
2024 WL 3416511 (N.D. Cal. July 15, 2024).......... 9

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 11, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......... *passim*

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).......... 16

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014).......... 15

*In re Google, Inc. Priv. Pol'y Lit*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 22

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 10, 11

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 22

*In re Yahoo Mail Litig*.,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 19, 22

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014).......... 10,11, 21

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 11, 12, 18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002).......... 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 13, 15

*Leon v. Loandepot.com, LLC*,
2025 WL 2632396 (C.D. Cal. Aug. 22, 2025).......... 5

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 19, 22

*Lujan Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 5, 6, 9

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........ 7, 9

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 12, 17

*Mitchener v. CuriosityStream, Inc.,*
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 7, 9

*Nichols v. Peacehealth Networks On Demand LLC*,
2026 WL 607763 ........ 12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 6, 7

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 18

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 20

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 19

*Smith v. YETI Coolers*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 19, 21

*Song fi Inc. v. Google, Inc.*,
108 F. Supp. 3d 876 (N.D. Cal. 2015) ........ 4

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 13

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 16, 17, 19

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) ........ 16

*Torres v. Prudential Financial*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 17

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 19

*Vivid Entertainment, LLC v. Fielding*,
965 F. Supp. 2d 1113 (2013) .......... 3

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 17

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 6, 9

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 .......... 10

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 .......... 11

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) .......... 1, 2, 14, 15, 16

**State Cases**

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138, 25 P.3d 649 (2001) .......... 15

*Hill v. National Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 20

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Ct. App. 1975) .......... 16

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 16

**Federal Statutes**

18 U.S.C. § 2510(4) .......... 11

18 U.S.C. § 2511 .......... 5, 10, 13

**State Statutes**

Article I, § 1 of the California Constitution .......... 5

Cal. Fin. Code § 4052(a, b) .......... 14

Cal. Penal Code § 631 .......... 16, 17, 18

Cal. Penal Code § 632 ........ 18, 19

**Federal Rules**

Fed. R. Civ. P. 12 ........ 6

**Federal Regulations**

16 C.F.R. § 313.3(n, o) ........ 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Malina Eckfeldt asserts privacy claims against Defendant Maximus Education, LLC d/b/a Aidvantage ("Aidvantage") based on Aidvantage's implementation, pursuant to express directions from the Department of Education ("DOE"),[1] of the ubiquitous Google Analytics ("GA") platform found on most webpages across the Internet. Plaintiff's claims relate to the sharing of anonymous record information consisting of Google's "Client IDs," website page URLs, and device information—and not including Plaintiff's name or other personally identifiable information ("PII"), let alone payment amounts. At most, the First Amended Complaint ("FAC") suggests that Google learned that an unidentified user visited a payment submission page on Aidvantage's .gov website, without revealing the payor's identity or payment amounts. This information is not protected by common law, the Gramm-Leach-Bliley Act ("GLBA"), or the California Financial Information Privacy Act ("CalFIPA"). Further, Plaintiff's alleged injury rests on the speculation as to what Google might do with the information upon receipt. But the FAC does not allege what Google actually did, and it thus fails to establish the required concrete injury ***to Plaintiff***, warranting dismissal for lack of standing.[2]

Further undermining Plaintiff's standing are Plaintiff's own choices to (1) create a Google account, (2) use the Website to make payments while logged into her Google account, and (3) voluntarily provide certain PII to Google and agree to Google's Terms, which include express permission to track her browsing behavior across the Internet. If, as Plaintiff speculates, Google ultimately uses these permissions to tie the information to Plaintiff, then her injury is not fairly traceable to Aidvantage.

Even if the Court concludes Plaintiff has standing, all of her claims should be dismissed on 12(b)(6) grounds. ***First***, Plaintiff fails to plausibly allege that Aidvantage intercepted the "contents" of her

---

[1] Aidvantage is entitled to governmental immunity as a DOE contractor because it installed Google Analytics at the direction of the DOE. *See Zocco v. Nelnet, Inc.*, Case No. 25-cv-4470 (N.D. Cal.) (Dkt. 19-1 at ¶4; Dkt. 19-2, explaining that Nelnet too installed GA pursuant to government request and raising sovereign immunity defense.) The Supreme Court recently held that derivative sovereign ("*Yearsley*") immunity is a merits rather than jurisdictional defense. *Geo Grp., Inc. v. Menocal*, 2026 WL 513536, at *7 (U.S. Feb. 25, 2026). Thus, Aidvantage reserves its *Yearsley* argument for the summary judgment stage.

[2] Aidvantage is contemporaneously moving to transfer the case to the E.D. Virginia based on the forum selection clause in the Terms of Use Plaintiff agreed to when she registered for an online account with Aidvantage. Notwithstanding choice of law issues, Aidvantage cites to Ninth Circuit law in this brief, but reserves the right to update the applicable authorities upon transfer.

communications, as required under the Electronic Communication Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA"). Instead, the information shared with GA constitutes mere "record information," as it says nothing about the meaning or import of Plaintiff's communications with the Website. ***Second***, Aidvantage could not have "intercepted" or "wiretapped" communications to which it was a participant. This is why another court in this District recently dismissed ECPA and CIPA claims against another federal student loan servicer, based on virtually identical GA allegations. *See Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (Wise, J.). Just as in *Zocco*, Plaintiff here argues that a carve-out to the ECPA's party exception applies because Aidvantage committed a tort; however, just as in *Zocco* Plaintiff fails to allege "how [Aidvantage] allegedly violated [the GLBA or CalFIPA] and that the violation was ***the purpose for the interception***." *Id.* (emphasis added). Without such allegations, and because Aidvantage is a participant to the communications at issue, her ECPA and CIPA claims must be dismissed.

***Third***, Plaintiff's CIPA claims fail because Google did not "read or understand" the substance of her communications with the Website ***while they were in transit***. And ***fourth***, Plaintiff's invasion-of-privacy claim fails because she cannot identify an egregious breach of social norms or a highly offensive intrusion, given that Plaintiff consented to the sharing of her record information with Google and Aidvantage, and given the ubiquity of GA in the modern world.

## II. FACTUAL BACKGROUND

***Aidvantage and its Website.*** Aidvantage is a servicer of federal student loans pursuant to a contract with the DOE.[3] Aidvantage is not alleged to, and does not, offer any financial products of its own.[4] The FAC relates to a website with the ".gov" extension, aidvantage.studentaid.gov ("Website"), allegedly maintained by Aidvantage, which allows student loan borrowers to manage their accounts online. (FAC ¶¶ 1–2, 6, 35–39.) Although Aidvantage gives borrowers a convenient option to make payments and otherwise manage the account online (*Id.* ¶ 37), it also offers borrowers an opportunity to make payments

---

[3] Maximus 2025 10-K, https://investor.maximus.com/sec-filings/all-sec-filings/content/0001032220-25-000053/0001032220-25-000053.pdf, at pp. 6-7. The Court can properly take judicial notice of this 10-K. *See* Aidvantage's Request for Judicial Notice ("RJN"), Ex. D.

[4] *See, id.* at p.5-6 (indicating Maximus is a "leading provider of tech-enabled services to government agencies," and that Aidvantage' is a "customer service provider assisting borrowers with Department of Education-originated loans.").

by mail, phone, or set up an "auto pay" without logging into the Website.[5]

***Plaintiff and Her Interactions with the Website.*** Plaintiff, a California resident, created an online account on the Website using her Gmail account; peculiarly, she "pays while logged into her [Google] account." (*Id.* ¶ 6.) Although the FAC is full of hypotheticals about what a borrower might do once logged into an Aidvantage account (*id.* ¶¶ 92-94), Plaintiff only claims to have "regularly accesse[d]" her account to "pay her student loans" and "affirmatively selected how her payment would be allocated." (*Id.* ¶ 6.) Plaintiff does not allege she ever requested a forbearance, and in fact she did not. (Linda Gramlich Declaration ("Decl."), ¶ 8.)[6]

The FAC alleges that only limited pieces of information were shared via GA about borrowers' interactions with the Website: a "Client ID" (an anonymous string of numbers Google assigns to a particular device and browser combination—for example, Figures 1-4 reference CID "263667512.1758116266"), browser and device characteristics, language settings, screen resolution, operating system information, and the URL or title of the Webpage visited.[7] (*Id.* ¶¶ 60–61, 65, 77–81, 94 & Figs. 1–2.) Figures 1-2 in the FAC, which supposedly represent what Aidvantage discloses to Google when a borrower makes payments or allocates overpayments, do not show the user's name, account number, payment amount, loan balance, or any other substantive financial information.

The FAC is less specific as to DoubleClick. Rather than identifying any data fields transmitted to Google via DoubleClick, the FAC focuses on how Google pitches DoubleClick Digital Marketing Services to advertisers. (FAC ¶ 66-71 & Fn. 3-6.) At most, the FAC suggests that DoubleClick facilitated the transmission of a CID or similarly anonymous session information. (FAC ¶¶ 67, 71, 79–82.) According to the FAC, the CID is uniform across GA and DoubleClick, allowing Google to "connect Analytics and DoubleClick interactions to a single user." (FAC ¶ 77.) Importantly, the FAC does not allege that either GA or DoubleClick is able to identify ***the name of that user***.

---

[5] *See* https://aidvantage.studentaid.gov/in-repayment/about-payments#:~:text=Online:%20Log%20in%20to%20your,Mail%20your%20payment%20to (describing the "4 ways to make a payment"). RJN, Ex. F; *see also* Linda Gramlich Decl. ¶ 4.

[6] The Court may properly consider this declaration in support of Aidvantage's standing arguments. *Vivid Entertainment, LLC v. Fielding*, 965 F. Supp. 2d 1113 (2013).

[7] Plaintiff also alleges that "IP address is inherently included in every network request" (FAC ¶ 95), but the IP addresses of Plaintiff or other users were never disclosed to Google. In fact, Plaintiff's own Figures 1-4 demonstrate that IP address is not one of the data fields shared with Google. (*See id.* ¶ 94.)

Google can allegedly combine the various pieces of data from the Website and other sources to match that information to a particular user or infer attributes and demographic categories associated with that user. (*Id.* ¶¶ 61–69, 78–82.) And because Google already possesses information from users' other interactions with Google services and third-party websites, Google can supposedly use that broader body of data to refine its identification of a borrower. (*Id.* ¶¶ 7, 53, 58–59, 69–70, 75.) Although the FAC does not allege Google can ascertain the user's name, Google's data compilation allegedly enables it to target borrowers with specific advertisements and generate profits for Google and Aidvantage.[8] (*Id.* ¶¶ 10, 53, 59, 87, 92, 103, 121, 180.) The FAC does not allege that Plaintiff received advertisements from Aidvantage or any third parties.

Plaintiff signed up for an Aidvantage account on September 25, 2025. (Decl. ¶ 7; FAC ¶ 6.) When Plaintiff created her account, she agreed to Aidvantage's Terms of Use and the Privacy Policy incorporated therein. (Decl. ¶¶ 7, 12-13.) Plaintiff did not engage in any payment transactions on the Aidvantage online account portal prior to December 10, 2025. (*Id.* ¶ 8.) The Aidvantage Privacy Policy in effect at that time advised users that the Website uses GA:

> Our website uses Google Analytics, a service which transmits website traffic data to Google Analytics servers in the United States. Google Analytics does not identify individual users or associate your IP address with any other data held by Google Analytics. We use reports provided by Google Analytics to help us understand website traffic and webpage usage. You may view the Google Analytics Privacy Statement located on the Google Technologies page.[9]

(Decl., ¶¶ 11-12 & Ex. B-C.)

---

[8] While Aidvantage must accept Plaintiff's allegations regarding "financial gain" and "profit" from advertising as true for purposes of this Motion, discovery will show that: (i) Aidvantage does not conduct ***any*** marketing or advertising—and Plaintiff does not allege that she received any advertising from Aidvantage; and (ii) Plaintiff's own allegations demonstrate the lack of any need for Aidvantage to advertise because federal loan servicers are ***automatically assigned*** to borrowers. (FAC ¶ 35 (alleging Plaintiff "did not have a say in which company would be [her] student loan provider")).

[9] Google Technologies page, in turn, includes information regarding "[h]ow [users] can control the information collected by Google on these sites and apps." *Technologies—Advertising*, GOOGLE, https://policies.google.com/technologies/partner-sites (last accessed March 25, 2026). The Court can consider Google's "Privacy & Terms" because they are cited and incorporated in the FAC. (FAC ¶ 71, n.7 (quoting and citing same); *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 880 n.2 (N.D. Cal. 2015) (considering YouTube's Terms of Service on motion to dismiss because they were incorporated).

***Plaintiff's Relationship with Google.*** In creating her Google account, Plaintiff voluntarily provided ***to Google*** her "name, email, phone number, gender, and date of birth." (FAC ¶ 7.) In turn, Google advised Plaintiff that "[m]any websites … use Google services to improve their content and keep it free," and they "share information with Google."[10] Google also disclosed that "when you visit a website that uses . . . analytics tools like [GA] . . . your web browser automatically sends certain information to Google." *Id.* Google allows users to manage information which websites using GA may share with Google.[11] For example, Google advises that, "If you don't want Analytics to be used in your browser, you can install the [GA Opt-out] browser add-on."[12] Google also allows users to adjust the Ad Settings and delete information collected by Google altogether.[13] The FAC does not describe how the settings on Plaintiff's Google account or browser were configured.

***Claims and Class Allegations.*** The FAC contains four claims: (i) a claim under the ECPA, 18 U.S.C. § 2511; (ii) a claim under CIPA § 631(a); (iii) a claim under CIPA § 632; and (iv) invasion of privacy claim under Article I, § 1 of the California Constitution.

Plaintiff seeks to bring claims on behalf of herself and two proposed classes: (1) a "Nationwide Class" consisting of all persons in the U.S. who accessed their Aidvantage account during the class period, and (2) a proposed California subclass consisting of all natural persons in California who did so. (*Id.* ¶¶ 112). While Plaintiff alleges that she was logged into her Google account while using the account, she seeks to represent individuals who were not logged into Google or even lacked Google accounts altogether.[14]

## III. <u>LEGAL STANDARD</u>

***Dismissal Under Rule 12(b)(1) for Lack of Article III Standing***. To establish standing, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the injury

---

[10] *Privacy & Terms*, GOOGLE, https://policies.google.com/technologies/partner-sites?hl=en-US (last accessed March 25, 2026). These Privacy & Terms are cited and incorporated in the FAC (¶ 71 & n.7).
[11] https://policies.google.com/privacy?hl=en-US#infochoices.
[12] *Privacy & Terms – How Google uses information from sites or apps that use our services*, https://policies.google.com/technologies/partner-sites.
[13] *Privacy & Terms – Your privacy controls* https://policies.google.com/privacy?hl=en#infochoices.
[14] For this reason, Plaintiff's proposed class definitions as overbroad, and should be stricken under Fed. R. Civ. P. 12(f). *See, e.g.*, *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class allegations at pleading stage under 12(f) because class definition was overly broad).

must be "fairly traceable to the challenged action of the defendant." *Id.* Finally, it must be "likely" that the "injury will be redressed by a favorable decision." *Id.*

A plaintiff cannot establish standing based merely on the disclosure of anonymous information about his actions on the Internet, as "there existed no free-roaming privacy right at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). Rather, a plaintiff must establish a connection between the harm alleged and one of the four privacy-related torts recognized at common law—i.e., "intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Id.* Plaintiff must establish an ***actual*** injury, and cannot do so merely by pointing to the alleged ***capability*** of third-party trackers to de-anonymize their data for advertising purposes. *See Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (disclosure "of one's email address and IP address, without more, does not bear similarity to the "highly offensive" interferences or disclosures that were actionable at common law").

***Dismissal Under Rule 12(b)(6) for Failure to State a Claim***. Rule 12(b)(6) allows an attack for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 677. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

## IV. PLAINTIFF LACKS ARTICLE III STANDING.

### A. Plaintiff Fails to Plead Actual Injury-in-Fact.

Plaintiff's speculative and conclusory allegations in the FAC fail to show that she suffered a concrete and particularized injury based on her interactions with the Website. Plaintiff makes vague generalizations regarding the type of information Google could, in theory, collect (FAC ¶ 58, 74–75, 79–82, 85–87), but she does not allege that Google did so with respect to Plaintiff. As the Ninth Circuit recognized, the tracking of one's interactions with a website does not necessarily cause one to experience the kind of harm that is similar to the "highly offensive" interferences or disclosures that were actionable

at common law. *Popa*, 153 F.4th at 791. Unless there is some "embarrassing, invasive, or otherwise private" information collected by the Website, the monitoring of one's interactions is "similar to a store clerk's observing shoppers … to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*, at 791.

Seeing an anonymous user access certain pages on Aidvantage's portal is the same as observing unidentified shoppers in the store and being able identify the aisles where they shop—the conduct allowed under *Popa*. Plaintiff attempts to manufacture a privacy injury by referring to supposed disclosures of PII and "nonpublic personal information" protected by the GLBA and CalFIPA. (FAC ¶ 10.) But Plaintiff's own allegations confirm that nothing "personally identifiable" was disclosed to Google. The most concrete description of the information allegedly disclosed to Google is found in Figures 1-2 of the FAC. (*See* FAC ¶ 94.)[15] The fields in these Figures do not identify the individual or include sensitive financial information; they merely reflect the URL of the page visited, and an anonymous CID number consisting of the string of numbers Google assigns to a particular device and browser combination. (FAC ¶¶ 65, 77, 94 & Figures 1-2.) At most, this metadata shows that an anonymous user accessed a particular page on the Website. Nothing in this metadata qualifies as PII or nonpublic personal information protected by the GLBA or CalFIPA. And these statutes aside, courts have repeatedly held that disclosures of this nature are insufficient to demonstrate Article III injury. *See, e.g.*, *Mitchener v. CuriosityStream, Inc.,* 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (collection of "basic contact information" including IP addresses and browser and device data did not give rise to concrete injury); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (no standing despite collected data including plaintiff's IP address, geolocation data, and email address).

The same is true for "fingerprinting" data (*e.g.*, device and browser information) Plaintiff alleges was disclosed. As the *Popa* court explained, fingerprinting details like "device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website," and "clicks" do not implicate privacy interests. 153 F.4th at 786. And Plaintiff's

[15] The only specific allegation ***Plaintiff*** raises regarding her interactions with the Website is that she "affirmatively selected how her payment would be allocated" during a logged-in payment session. (FAC ¶¶ 6, 94.) Because Figures 3-4 only pertain to alleged disclosures in connection with forbearance requests—which Plaintiff does not, and cannot, allege she ever submitted—they are irrelevant to Plaintiff's own claims. (*See* Decl. ¶ 8.)

speculation that ***Google*** may be able to link a CID to a particular user is just that—speculation—and does not transform the information Aidvantage allegedly shared with GA into Plaintiff's "PII."

Plaintiff posits that the mere fact that an individual is a financial institution's customer or obtained a financial product or service is "personally identifiable financial information" protected by the GLBA or CalFIPA. (FAC ¶¶ 161-62.) That may be true, but the FAC does not allege that Aidvantage disclosed anyone's name or identity, and nothing in the GLBA and CalFIPA prevents disclosure of anonymized Google CIDs. To get from a Google CID to a person's name and identity is a long and speculative leap that depends on actions of third parties (including Plaintiff and Google) outside of Aidvantage's control.

Compare this case with *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), where the Ninth Circuit found standing based on the allegations that Facebook collected vast swaths of data even after plaintiff had logged off Facebook over a significant amount of time, revealing information like "employment history and political and religious affiliations." *Id.* This allowed Facebook to gain a "cradle-to-grave profile without users' consent." *Id.* Here, by contrast, Plaintiff alleges Aidvantage embedded its Website with GA and DoubleClick tools that caused her browser to transmit certain data to third-party servers, but ***only*** during her handful of visits to the Website. The minimal information disclosed during Plaintiff's limited interactions with the Website simply does not rise to the "level of intrusion" necessary to establish an injury in fact for Article III purposes. *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (standing lacking where disclosures via tracking pixels installed on Tesla's website were not "highly offensive"); *Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (rejecting plaintiff's analogy to *Facebook* because plaintiff did not allege the defendant's website continuously collected data from multiple websites and only established collection of "'IP addresses,' undefined 'unique identifiers,' and 'browsing information'"). This is particularly true given that Plaintiff: (i) had control over what data she shared with Google, and agreed to allow disclosures of anonymized data related to her interactions with the Website (*see supra* p.5 & n.11); and (ii) accepted Aidvantage's Privacy Policy which, during the relevant time when Plaintiff submitted her payments, disclosed the use of GA. (Decl. ¶¶ 7-8, 11-12; Ex. C thereto.)

Lastly, Plaintiff cannot establish standing based on a risk of future hypothetical harm to her purported privacy interests. Plaintiff can stop using the Website and instead utilize one of the alternative

payment options Aidvantage offers—or simply continue the autopay she enrolled in. (Decl. ¶¶ 4, 9.) *See, e.g.*, *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *2 (N.D. Cal. July 15, 2024) (no standing to pursue injunctive relief given absence of allegations plaintiffs were still using website). To the extent Plaintiff is concerned about hypothetical harm based on ***Google's*** use of information it received through GA, Plaintiff can adjust her Google settings and opt out of Analytics in Google. (*See supra* p.5 & n.12.) In addition, Plaintiff has not alleged that Google misused her information in a way that could have caused her an injury—for example, she does not allege that she was served targeted ads due to Google's "interception" of her data. The purely hypothetical risk of Google misusing her data (assuming it could even be attributed to Plaintiff in the first place) cannot establish standing, requiring dismissal of the claims against Aidvantage. *Wooten*, 807 F.Supp.3d at 1145 (no standing established where plaintiffs were not "subject to any … targeted advertising"); *Mitchener,* 2025 WL 2272413, at *4 (conclusory allegations about what information defendants "***could***" gain were insufficient to establish concrete harm to plaintiff); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing CIPA and ECPA claims in absence of "allegations suggesting a risk of future harm to them is imminent or substantial").

**B. Plaintiff's Injury, If Any, Is Not Fairly Traceable to Aidvantage.**

Plaintiff also lacks standing because the injury she allegedly suffered was not fairly traceable to Aidvantage. Plaintiff alleges that she voluntarily provided her "name, email, phone number, gender, and date of birth" to Google when signing up for a Gmail account and further that she interacted with Aidvantage's Website while staying logged into her Gmail account. (FAC ¶¶ 6-7.) To the extent Plaintiff's continued login might allow Google to better tie anonymous record data to Plaintiff, this outcome is not fairly traceable to Aidvantage. *See Lujan*, 504 U.S. at 562 (standing fails when the existence of essential elements "depends on the unfettered choices made by independent actors not before the courts"). Plaintiff cannot "manufacture" standing by voluntarily providing PII to Google, choosing not to protect herself by adjusting Google settings, and then crying foul based on the possibility of Google "de-anonymizing" her interactions with the Website. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves").

## V. <u>PLAINTIFF'S CLAIMS WARRANT DISMISSAL ON 12(B)(6) GROUNDS</u>

### A. Plaintiff Fails to State a Claim Under the ECPA.

To state a claim under the ECPA, Plaintiff must allege that Aidvantage: (1) intentionally (2) intercepted (3) the contents of (4) an electronic communication (5) using a device. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024). Plaintiff's ECPA claim should be dismissed because she fails to adequately allege "interception" of "contents" using a "device." In addition, the ECPA contains an exemption from liability for a person who is a "party" to the communication, so long as such interception is not "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Aidvantage qualifies for that party exemption.

1. <u>Plaintiff Fails to Allege Disclosure of "Contents" of Her Interactions.</u>

Under the ECPA, "contents" is "the intended message conveyed by the communication," as opposed to "record information regarding the characteristics of the message." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024). For example, courts have concluded that a URL with only basic identification and address information is not content, unless it discloses a "search term or similar communication made by the user." *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075-76 (N.D. Cal. Sept. 7, 2023)). Demonstrating this principle, the Ninth Circuit found that URLs that reflect a user's visit of various pages, even if the page name was for a gay support group, are not content. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014).

The FAC fails to plausibly allege that Aidvantage's Website disclosed anything beyond mere record information for users' interactions with the Website. While Plaintiff speculates regarding what Google ***could*** learn by piecing multiple bits of information from various sources together, the allegations regarding what Google actually learned about Plaintiff are lacking. The FAC only alleges that Plaintiff made payments and "affirmatively selected how her payment would be allocated" on the Website (FAC ¶ 6), which conveyed to Google that a particular CID number, using certain browser and language settings, visited the "Repayment Options" and "Change Payment Directions" pages on the Website. (FAC ¶ 94 & Figs. 1-2.) Plaintiff does not—and cannot—assert that Aidvantage disclosed Plaintiff's identity, payment amounts, loan balance, or actual payment allocation preferences. Instead, Figures 1-2 merely reflect the

URLs of pages visited, fingerprinting data, and an anonymous CID number. This metadata says nothing about the ***substance*** of the user's underlying communication with the Website, and is not enough to plausibly allege that "contents" were intercepted, requiring dismissal of the ECPA claim. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022) ("person's name, address, and subscriber number or identity is record information," and "URLs are record information when they only reveal a general webpage address and basic identification information"); *In re Zynga*, 750 F.3d at 1108-09; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 718.

2. Plaintiff Has Not Adequately Alleged "Interception."

The ECPA defines the "intercept" element as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The Ninth Circuit has construed interception "as requiring that the defendant intercept the communication in question ***contemporaneously with transmission***." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1076 (N.D. Cal. 2015) (emphasis in original) (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002)). Further, courts have interpreted interception as requiring the interceptor to read and understand the contents of the communication. *See Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024) (noting "identical standard" of ECPA and CIPA, and requiring showing that defendant "read or understood" transmission in real time to establish liability). Plaintiff cannot meet the interception requirement.

***First***, Plaintiff has failed to plausibly allege that ***Aidvantage*** intercepted Plaintiff's private information. According to the FAC, Aidvantage received Plaintiff's information consensually and not by "intercepting" her communications "through the use of any electronic, mechanical, or other device." (FAC ¶ 6, 42, 61.) Rather, Plaintiff's theory is that ***Google*** intercepted some portion of Plaintiff's interactions with the Website. (FAC ¶ 60.) Where Aidvantage indisputably obtained Plaintiff's communications through her voluntary interactions with the Website and not by using GA or DoubleClick, Aidvantage did not "intercept" the communication via "electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) ("intercept" requirement not met where Amazon "did not acquire [communication] using a device other than the drive or server on which the e-mail was received"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *8 (N.D. Cal.

Mar. 26, 2013) (dismissing claims for failure to allege interception of "communication to another party").

The FAC seems to suggest that Aidvantage assisted Google and, in doing so, "procured another person to intercept, the electronic communications of Plaintiff." (FAC ¶ 132.) However, the Ninth Circuit—and the majority of other courts—have rejected this "aiding and abetting" liability for "procuring" an interception under the ECPA. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (there is "no support for the argument that secondary liability should be imposed" under ECPA); *see In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089–90 (N.D. Cal. 2015) (collecting cases and rejecting secondary liability under ECPA); *Nichols v. Peacehealth Networks On Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (citing cases). That is because the "plain language of statute [does] not provide for secondary liability." *Freeman*, 457 F.3d at 1005. Thus, Aidvantage cannot be liable for allegedly aiding Google with the interception.

***Second***, the FAC does not establish that Google read or understood the "contents" of Plaintiff's communication with the Website in real time. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (defendants are only liable for an interception if they have "read or learned the contents of a communication while the communication was in transit"). As discussed in more detail Section V.B.2 below, the FAC does not plausibly allege that Google ***read or understood*** the ***contents*** of Plaintiff's communication with the Website ***while it was in transit***. *See Jones*, 751 F. Supp. 3d at 1036 (dismissing CIPA § 631 claim based on precedent established in ECPA context where plaintiff did not allege defendant "read or learned the contents of a communication while the communication was in transit"); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Although Plaintiff alleges Google "intercepted" certain data in real time (FAC ¶¶ 71, 96), the intercepted anonymized metadata says nothing about the substance or meaning of Plaintiff's communications with the Website—and thus it does not represent "contents" of Plaintiff's communications. Rather than establish that Google "read" or attempted to read Plaintiff's communications ***while they were in transit***, the FAC confirms that it is only after Google receives and processes the data in its database (and matches this with other pieces of information in Google's possession and conducts browser fingerprinting) that it can try to analyze the data. (FAC ¶¶ 61-62, 79, 86.) Google is not alleged to have read or understood the substance of Plaintiff's interactions with the Website

(including who the Plaintiff is, what payments she made, and what kind of overpayment instructions she gave) until after Google receives and further analyzes the data. As such, even if Aidvantage could be liable under the aiding and abetting theory (and it cannot be), it is not liable here because Google does not intercept the contents of communication at the time of the transmission.

3. Aidvantage Is Not Liable Because It Was a Party to Communications, and Plaintiff Cannot Establish Crime-Tort Exception.

Regardless of the analysis above, Aidvantage is not liable under the ECPA because it was a party to the communication. The ECPA contains "an exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc.*, 956 F.3d at 606–07; 18 U.S.C. § 2511(2)(d) (it is not unlawful to intercept a communication where a person "is a party to the communication … ***unless*** such communication is intercepted ***for the purpose*** of committing any criminal or tortious act") (emphasis added). Aidvantage is a "party" to Plaintiff's communications with Aidvantage's Website, which Google allegedly intercepted, and as such qualifies for the party exemption. (FAC ¶¶ 10, 39, 49, 88.)

Plaintiff's attempts to invoke the crime-tort exception from the party exemption are unavailing. (FAC ¶¶ 137-139.) In order to invoke the crime-tort exception, Plaintiff must show that a "primary motivation or a determining factor in [Aidvantage's] actions has been to injure plaintiff[] tortiously." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Id.* (quoting *Sussman v. Am. Broad. Companies, Inc*., 186 F.3d 1200, 1202 (9th Cir. 1999)). Plaintiff must identify a tortious or criminal act "that is independent of the intentional act of recording or interception itself." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024).

Plaintiff formulaically pleads that "Defendant intentionally intercepted the contents … for the purpose of committing a criminal or tortious act"—i.e., violations of the GLBA or CalFIPA. (FAC ¶ 137.) This allegation is insufficient for two key reasons. ***First,*** as described on pp. 7-8 above, Plaintiff does not plausibly allege that Aidvantage violated, let alone intended to violate, GLBA or CalFIPA. Her own allegations (*see, e.g.*, FAC ¶ 94 & Figures 1-2) demonstrate that the data at issue was anonymized.

Aidvantage could not have violated the GLBA or CalFIPA, which, by their plain terms, only prohibit disclosure of ***personally identifiable*** information. *See* 16 C.F.R. § 313.3(n, o); Cal. Fin. Code § 4052(a, b); (FAC ¶¶ 25-26, 30-31.)

Relatedly, the test of whether information is "personally identifiable" in this Circuit is whether ***an ordinary person*** could identify the individual based on the disclosure. *Cf. Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (holding that disclosure of device serial number was not "personally identifiable" information because an ordinary person would be unable to identify a particular user). Here, this test is not met, as the FAC admits identification requires sophisticated fingerprinting techniques developed by computer science researchers. (*See* FAC ¶ 83.) Because an ordinary person would not be able to identify Plaintiff, her interactions with the Website do not constitute PII.

***Second***, specific allegations elsewhere in the FAC refute the conclusory assertion that Aidvantage's primary purpose in facilitating the alleged "interception" was to commit an independent tort. Plaintiff alleges (albeit baselessly) that Aidvantage's primary purpose was profit or advertising—i.e., economic benefit. (*See* FAC ¶¶ 10, 92, 103.) Judge Wise recently dismissed nearly identical ECPA and CIPA claims against another federal student loan servicer, premised on the theory that the installation of GA on its website—pursuant to the same DOE direction—violated plaintiff's privacy rights. Judge Wise concluded that plaintiffs failed to "state how Nelnet allegedly violated [the GLBA and CalFIPA,] [or] that the violation [of these statutes] ***was the purpose for the interception***." *Zocco*, 2026 WL 242037, at *5 (emphasis added). The present FAC features the same fatal flaws with the ECPA and CIPA claims. It merely cites additional statutory language from CalFIPA and GLBA (*e.g.*, FAC ¶¶ 31-34, 161-162), but does nothing to substantiate the same conclusory allegation that Judge Wise found inadequate in *Zocco*—that Aidvantage acted with "the purpose of committing a criminal or tortious act." (*id.* ¶¶ 137-38); 2026 WL 242037, at *5. The FAC identifies no facts to support Plaintiff's unsupported allegation that Aidvantage acted ***with the purpose*** of committing a tort ***independent*** of the interception. *See Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025) (conclusory allegations were insufficient to establish that the "primary motivation" of a hospital defendant that installed Meta Pixel and GA was to commit a criminal violation or tort). Instead, the FAC suggests that Defendant's primary motive was to monetize analytics data. (FAC ¶¶ 10, 52, 75, 85, 103.) In light of Plaintiff's

affirmative assertions regarding Aidvantage's supposed motivation, Plaintiff's conclusory allegation that Aidvantage's primary purpose was to violate the GLBA and CalFIPA is not entitled to be credited. *Zocco*, 2026 WL 242037, at *5. The Court should therefore dismiss Plaintiff's ECPA claim based on the party consent exemption, as numerous other courts have done based on similar rationale to *Zocco*. *Goulart*, 2025 WL 1745732, at *3-4; *Lakes*, 777 F. Supp. 3d at 1057 (dismissing ECPA claim notwithstanding plaintiffs' arguments that defendant acted with the purpose of committing a crime or tort since complaint demonstrated purpose of interception was "to make money"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("the tort or crime exception cannot apply where the interceptor's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money").

### B. Plaintiff Fails to State a Claim under CIPA.

Plaintiff also asserts claims for violations of CIPA—a statute enacted in 1967 to criminalize "eavesdropping upon private communications." *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1111 (2025). Plaintiff seeks to stretch this pre-Internet-era criminal statute to hold Aidvantage liable for implementing GA on its Website (despite counsel's knowledge, including from the Nelnet litigation, that the DOE ***expressly required*** all federal student loan lenders to implement GA). There is no conspiracy here between Aidvantage and Google to "eavesdrop" on Plaintiff or violate her privacy rights; rather, the anonymized record data collected from the Website is meant to improve the online experience of student loan borrowers across servicers' websites. This is not the type of conduct CIPA was meant to prohibit. *See id.* at 1112 (noting that "using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping."). Further, to the extent there is any doubt as to Aidvantage's potential liability under CIPA, "it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Id.* at 1118-19 (quoting *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154, 25 P.3d 649, 659 (2001)). The rule of lenity requires construing any ambiguity in Aidvantage's favor.

Plaintiff's CIPA claims should be rejected as a matter of law because: (i) Aidvantage cannot be held liable for "eavesdropping" on its own conversations and there is no predicate CIPA violation under § 631 that Aidvantage could have "aided and abetted"; (ii) Plaintiff fails to allege that Google read or

understood her communications while they were in transit; and (iii) CIPA § 632 does not provide for aiding and abetting liability and only applies to "confidential communications" not alleged here.

1. Aidvantage Cannot be Held Liable for Eavesdropping on its Own Conversations and Did Not "Aid and Abet" Any Violation of §631.

The first three clauses of § 631 impose liability for three distinct and mutually independent patterns of conduct, including a first clause for intentionally tapping or making an unauthorized connection, a second clause for secretly intercepting communications, and a third clause for using information unlawfully obtained. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1120 & n.2 (C.D. Cal. 2024) (quoting *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978)). Based on the text of these three clauses, a party cannot be held liable for "eavesdropping" on its own conversation. *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (citing *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Ct. App. 1975)). Because courts apply the same analysis for the party exception under both the Wiretap Act and CIPA, Plaintiff's CIPA claims should be dismissed for the same reasons set forth in Section V.A.3 above—namely, that Plaintiff does not plausibly allege Aidvantage acted with the ***primary purpose*** of committing a tort independent of the alleged interception. *See In re Facebook*, 956 F.3d at 607; *Zocco*, 2026 WL 242037, at *6 (dismissing CIPA claims since plaintiffs failed to plausibly allege ECPA crime-tort exception applied); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145, 152 (3d Cir. 2015) (affirming dismissal of CIPA claims because the ECPA's party exemption applied). Although this point in and of itself is dispositive and dooms Plaintiff's § 631 claim, the claim can also be dismissed because Plaintiff fails to establish any predicate violation of the first three clauses ***by Google*** that Aidvantage could have "aided and abetted" (as she must to state a claim under the fourth clause of § 631).

The first clause is not implicated here because Plaintiff does not allege Google tapped a "telegraph or telephone wire, line, cable, or instrument," and, as this Court recognized, the first clause of § 631(a) does not apply to interception via internet. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (Tigar, J.).

Plaintiff alleges that Google violated the second clause because it read, attempted to read, or attempted to learn the contents of her communications with Aidvantage while they were in transit, but as

explained above (*see* § V.A.2) and below (*see* § V.B.2), Plaintiff has not plausibly alleged that any "contents" of her communications with Aidvantage were "read," or "learned," let alone read or learned while these communications were "in transit." Instead, the record information allegedly disclosed to Google reveals nothing about the substance of Plaintiff's interactions with the Website. Plaintiff has not plausibly alleged Google read, or attempted to read, her communications while they were in transit.

The third clause of § 631 prohibits the use or attempted use of information obtained through the means prohibited in clauses 1-2. Plaintiff's claim under the third clause fails given her inability to establish a violation of the first two clauses of § 631(a). *See Swarts*, 689 F. Supp. 3d at 744 ("A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a).").

In sum, Google did not violate the first three clauses of § 631, such that Aidvantage could not possibly have aided and abetted Google in such violation.

2. <u>Plaintiff Has Not Plausibly Alleged That Aidvantage "Read or Learned" the "Contents or Meaning" of Her Communications While They Were in Transit.</u>

CIPA requires Plaintiff to establish that Aidvantage intercepted the "contents or meaning" of a message, a requirement courts have interpreted as being co-extensive with the ECPA's "contents" requirements. *See In re Facebook*, 956 F.3d at 607; *Heiting*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023) (noting that "CIPA borrows the definition of protected 'contents' from the federal Wiretap Act"). Plaintiff's CIPA claim thus fails for the same reasons identified in Section V.A.1—because allegedly intercepted anonymized metadata says nothing about the substance of her communications with the Website.

Penal Code § 631(a) also requires plaintiffs to show that an eavesdropping occurred "while the [communication] is in transit." To establish liability, the interceptor must have "***read or learned*** the contents of a communication while the communication was in transit, or in the process of being sent or received." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (emphasis added).While Plaintiff formulaically asserts in Count II of the FAC—and nowhere else—that Google "read, attempted to read, and/or learned the contents or meaning of electronic communications . . . while [they] were in transit" (FAC ¶ 150), this allegation is contradicted by her remaining allegations.

To "read" or attempt to "read" communications under CIPA, there must be "some effort at understanding the substantive meaning of the message, report or communication." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024); *see also Torres v. Prudential Financial*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (concluding "in transit" requirement was not met because third-party interceptor did not actually read or attempt to read the communications while they were in transit). Here, rather than establish that Google "read" or attempted to read the substance of Plaintiff's communications ***while they were in transit***, the FAC confirms that it is only after Google: (i) receives; (ii) packages; (iii) processes; and (iv) stores data on its database that it ultimately generates reports and analyzes the data. (FAC ¶¶ 61-62.)

This is fatal to Plaintiff's § 631 claim for reasons Judge Chhabria recently explained in *Doe*, 806 F. Supp. 3d at 1117. There, the plaintiffs asserted CIPA claims based on allegations that their sensitive interactions with an eating disorder treatment center's website were intercepted via the Meta Pixel tracker. *Id.* at 1113. The Court rejected the CIPA claims because it was undisputed that Facebook's "filtering operation"—alleged to be part of "reading" the messages' "contents"—took place ***after*** the "communication has already traveled from the website visitor to the website operator." *Id.* at 1117. Here, too, the FAC alleges that Google can identify the user and analyze the person's interactions with the Website only after the receipt of the same. (*See* FAC ¶¶ 61-62, 86, 95, 97.) Plaintiff's own allegations therefore establish that Google did not "read" the allegedly intercepted data in real time, requiring dismissal of her § 631(a) claim.[16]

3. Aidvantage Cannot Be Liable Under § 632(a) for Eavesdropping on Its Own Communications.

Penal Code § 632(a) provides for liability against a "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device

[16] *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (allegations that "Google receives information as it is being transmitted," processes the information, and "[o]nce [GA] receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria . . . do not support a plausible inference Google reads the information" while in transit); *see also Doe*, 806 F. Supp. 3d at 1117 ("A filtering process that simply sorts out certain data . . . can't fairly be characterized as an effort at understanding the meaning of the communication."); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) (averments that "customer chats were 'intercepted in real time'" are "below the *Twombly* and *Iqbal* plausibility threshold").

to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). To state a claim under § 632, plaintiff must show there was: (1) an electronic eavesdropping or recording of (2) a confidential communication and (3) all parties did not consent. *Smith v. YETI Coolers*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). "Confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

Plaintiff cannot sustain a claim under § 632 because, again, the parties cannot "eavesdrop" on their own conversations. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) ("It is never a secret to one party to a conversation that the other party is listening to the conversation."). And unlike § 631(a), § 632 does not provide for "aiding and abetting" liability, meaning that Plaintiff must show that ***Aidvantage itself*** rather than Google unlawfully "recorded" her confidential communication to sustain a claim. *See* Cal. Penal Code §§ 631, 632; *Smith*, 754 F. Supp. 3d at 944 ("Unlike the fourth clause of … § 631(a), … § 632 does not expressly provide for derivative liability."). Plaintiff cannot make this showing.

Finally, Plaintiff cannot establish that her communications with the Website—such as they were shared with GA—were "confidential." As discussed in § V.C.1 below, Plaintiff lacked any reasonable expectation of privacy in the anonymized record information allegedly disclosed through her voluntary use of the Website—particularly given that she was logged into her Google account when she engaged with the Website. This is yet another reason warranting immediate dismissal of this claim.[17]

**C. Plaintiff Fails to State a Claim Under the California Constitution.**

"The California Constitution sets a 'high bar' for establishing an invasion of privacy." *Smith*, 754 F. Supp. at 944 (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014)); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). To state a claim for invasion of privacy under the California Constitution, plaintiffs must show that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to contribute an egregious breach of the social norms such that the breach is highly offensive." *Shah v.*

[17] This Court has likewise held that § 632 does not apply to Internet communications. *See Swarts*, 689 F. Supp. 3d at 747 (Tigar, J.) ("A plain reading of the text itself makes clear that [CIPA § 632] only applies to communications transmitted by telephone, not internet"). This is a separate reason for dismissal.

*Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (quoting *In re Facebook*, 956 F.3d at 601). Even assuming Plaintiff possessed a legally protected privacy interest, the facts as alleged fail to satisfy the second and third elements of the claim.

1. Plaintiff Fails to Allege Facts to Demonstrate She Maintained a Reasonable Expectation of Privacy in Disclosed Information.

It is well established under California law that if the facts as alleged "'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'" *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021) (quoting *Hill*, 7 Cal. 4th at 40). "[C]ustoms, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Hill*, 7 Cal. 4th at 36. "A plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion." *Saleh*, 562 F. Supp. 3d at 524; *see Hill*, 7 Cal. 4th at 26 ("[T]he plaintiff in an invasion of privacy case must have conducted himself … in a manner consistent with an actual expectation of privacy [and] not have manifested by his … conduct a voluntary consent to the invasive actions of defendant").

As explained in Sections IV.A and V.A.1 above, the only specific Website interaction identified by Plaintiff is that she made payments and "affirmatively selected how her payment would be allocated" during a logged-in payment session. (*See* FAC ¶¶ 6, 94 & Figures 1-2.) Plaintiff accessed the Website while logged into her own Google account (FAC ¶ 6), undercutting her contention that she "had a reasonable expectation of privacy" with respect to the disclosure of information entered on the Website to Google. (*Id.* ¶¶ 167, 173; *see also supra* p.5 (summarizing various terms from Google Privacy Policy disclosing Google's collection of information relating to its users' web-browsing activities).) Likewise, the Aidvantage Privacy policy disclosed the transmission of "website traffic data to Google" through GA, thereby correcting any misconceptions Plaintiff may have had as to her privacy expectation in the information she alleges was wrongfully disclosed. (*See supra* p.4 (quoting Privacy Policy).) The lack of any ***reasonable*** expectation of privacy here is particularly salient given that the information allegedly disclosed does not identify the borrower or include sensitive financial information like loan balance or payment amounts. Given both the context in which Plaintiff's communications with the Website occurred (i.e., while Plaintiff was logged in to her Google account, after she consented to Google's and

Aidvantage's Privacy Policies) and the nature of information allegedly disclosed (i.e., anonymized metadata), Plaintiff lacked any reasonable expectation of privacy with respect to her voluntary use of the Website. *See Zynga*, 750 F.3d at 1108–09 (concluding that there is no reasonable expectation of privacy in the URL of a website the plaintiff had previously visited or in basic identification information); *Eichenberger*, 876 F.3d at 985 (disclosure of device serial number was not PII and thus not a protected privacy interest because an ordinary person would be unable to identify a particular user).

2. <u>Plaintiff Fails to Allege Serious, Egregious or Highly Offensive Breach of Social Norms.</u>

Under this element, the plaintiff must plead facts sufficient to show that "the intrusion is 'so serious as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook*, 956 F.3d at 601. It is well-established that conduct is not an egregious breach of social norms, nor highly offensive, when it amounts to "routine commercial behavior." *Smith*, 754 F. Supp. 3d at 946; *see also Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022).

Plaintiff's own allegations demonstrate the lack of any "egregious breach" of social norms relating to her privacy rights. Throughout the Complaint, Plaintiff highlights the ubiquity of GA across the Internet, alleging that it has "become one of the most popular web analytics platforms." (FAC ¶ 56.) Accordingly, Plaintiff cannot plausibly allege that Aidvantage's use of GA on its Website egregiously deviated from social norms given the setting of the purported "intrusion"—i.e., the Internet. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (indicating that GA "is on over 70 percent of all websites and collects users' data on every visit"). Plaintiff does not allege that the challenged tracking caused any interruption of her ability to make payments on her loan, any misuse of her identity, or any publication of her information to the public at large. Instead, she alleges only that Google receives these routine web-interaction signals, which it can theoretically use (but is not alleged to have used with Plaintiff specifically), along with device and cookie identifiers, for analytics and targeted advertising. (FAC ¶¶ 50–52, 71–76, 87–103, 176–177.) As pleaded, then, the asserted "intrusion" is limited to the background collection and potential (but not actual) downstream marketing use of web analytics and ad-tech data generated by users' interactions with the Website—precisely the sort of commonplace tracking that internet users encounter whenever they use modern online services.

In this respect, the FAC alleges the same type of conduct that courts have repeatedly treated as non-egregious, "routine commercial behavior" not actionable under the California Constitution. Indeed, "[e]ven disclosure of very personal information [like personal data, geolocation data, SSNs, and plaintiffs addresses] has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Yahoo Mail*, 7 F. Supp. 3d at 1038; *see also Low*, 900 F. Supp. 2d at 1025 (disclosure of SSNs not "highly offensive"). Far from these examples, Plaintiff alleges that Aidvantage disclosed to Google only anonymized metadata in the form of CID, webpage URLs, and fingerprinting data—all anonymized record data that Plaintiff only speculates Google could "link" to a particular user. (FAC ¶¶ 94-97). This Courts have held that disclosure of far more sensitive information could not sustain an invasion of privacy claim.

For example, in *In re iPhone Application Litigation*, this Court dismissed invasion of privacy claims even though the complaint alleged that defendants disclosed plaintiffs' addresses, current whereabouts, unique device identifier assigned to the Device, the user's gender, age, zip code and time zone, and the functions Plaintiff performed on the app. 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The comparatively generic account and device information alleged here—anonymous CID, webpage URLs, and fingerprinting data—is far less sensitive than information at issue in *iPhone Application Litigation*, where the court noted that even "conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution." *Id.*; *see also In re Google, Inc. Priv. Pol'y Lit.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) (disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party was not highly offensive); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (disclosure of "names, emails, phone numbers, addresses, social security numbers, browsing histories, and user locations" through healthcare website not highly offensive).

## VI. **CONCLUSION**

The Court should dismiss Plaintiff's Complaint. Because Plaintiff cannot amend the Complaint to overcome the flaws discussed herein, the dismissal should be with prejudice.

DATED: March 25, 2026

**FOLEY & LARDNER LLP**
John Atallah

*/s/ John Atallah*
John Atallah
Irina Kashcheyeva
(admitted *pro hac vice)*
Charles W. Niemann
(*pro hac vice forthcoming)*
Attorneys for Defendant
MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE