**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALINA ECKFELDT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE,<br><br>Defendant. | Case No. 4:25-cv-10217-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: June 4, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Jon S. Tigar |

## TABLE OF CONTENTS


PAGE(S)

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 2

I. PLAINTIFF HAS ARTICLE III STANDING ..... 2

A. Plaintiff Adequately Alleges A Concrete And Particularized Injury ..... 2

B. Plaintiff's Injury Is Traceable To Defendant ..... 5

II. PLAINTIFF STATES A CLAIM UNDER THE ECPA ..... 7

A. Defendant Intercepted and Disclosed The "Contents" Of Plaintiff's Communications ..... 7

B. Plaintiff Adequately Pleads An Interception ..... 8

C. Defendant Is Liable Under The Crime-Tort Exception ..... 11

III. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 ..... 14

A. Plaintiff Alleges Google Violates The Second Prong Of 631 ..... 14

1. Google Intercepted The Contents Of Plaintiff's Communications ..... 15

2. Google Read Or Attempted To Read Plaintiff's Communications ..... 16

3. Defendant Never Obtained Plaintiff's Consent To Eavesdrop ..... 16

4. Interception Occurred In Transit ..... 16

B. Defendant Aided And Abetted Google's Unlawful Interception ..... 17

IV. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632 ..... 19

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ..... 21

VI. SHOULD THE COURT FIND THE COMPLAINT DEFICIENT, LEAVE TO AMEND IS PROPER ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allison v. PHH Mortgage*,
2026 WL 899438 (N.D. Cal. Mar. 27, 2026) .......... 2, 12

*Ambriz v. Google*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 7, 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 7, 20

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 12

*Casillas v. Six Flags Ent. Corp.*,
2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) .......... 24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 6

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y., 2024) .......... 14

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 16, 18

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 10, 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 24

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) .......... 20

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 3, 5

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 3, 24

*Gabrielli v. Motorola Mobility LLC.*
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 15, 17, 19

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .......... 6, 13

*Garcia v. Truist Fin. Corp.*,
2026 WL 972328 (C.D. Cal. Mar. 25, 2026) .......... passim

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020) .......... 19

*Gianne v. Accor Mgmt. US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026) .......... 19

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 11

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 20

*Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) .......... 18

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 24

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. 2025) .......... 14

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 9, 10

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google RTB Consumer Priv. Litig.*,
606 F.Supp.3d 935 (N.D. Cal. June 13, 2022) .......... 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........7, 8

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014)........9

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)........10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)........15

*In re Zynga Priv. Litig.,*
750 F.3d 1098 (9th Cir. 2014)........7

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)........5

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026)........4

*Katz-Lacabe v. Oracle America, Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023)........15

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026)........3

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025)........12

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)........20

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006)........9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)........2

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........6

*Marden v. LMND Medical Group, Inc.*,
2024 WL 4448684 (N.D. Cal. 2024)........13

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)........18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)........6

*Moskowitz v. Superior Court*,
137 Cal.App.3d 313, 187 Cal. Rptr. 4 (Cal.Ct.App.1982) ........................................................ 5

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ................................................................ 24

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) .................................................................. 3

*Polich v. Burlington Northern, Inc.*,
942 F.2d 1467 (9th Cir.1991) ........................................................................................ 24

*Popa v. Microsoft Corp.,*
153 F.4th 784 (9th Cir. 2025) ...................................................................................... 3, 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ...................................................................... 7, 13

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ............................................................ 11, 13

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ............................................................ 10, 12, 14, 15

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................................................ 18

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .................................................................... 10

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...................................................................... passim

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .................................................................. 13

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......................................................................... 20

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ............................................................... passim

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ............................................................. 16, 24

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ............................................................... 16, 24

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ......................................................................... 4, 21

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 3

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 9

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......... 11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 20

*Tash, v. Vision Service Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) .......... 5

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 17

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) .......... 4, 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 19

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 10

*Valley Bank of Nevada v. Superior Court*,
15 Cal. 3d 652 (1975) .......... 4, 21

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 19

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 17

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 18, 20, 21

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 7

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ... 19

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ... 11, 14, 21, 23

**STATUTES**

18 U.S.C. § 2511 ... 1, 24

18 U.S.C. § 2511(1)(a) ... 9

Cal. Const. art. I, § 1 ... 5

Cal. Fin. Code § 4051 ... 6, 11

Cal. Fin. Code § 4051(b) ... 21

Cal. Fin. Code § 4052 ... 22

Cal. Fin. Code § 4052.5 ... 21

Cal. Pen. Code § 31 ... 19

Cal. Pen. Code § 631 ... 1, 15, 16, 17, 18

Cal. Pen. Code § 631(a) ... 15, 17, 18

Cal. Pen. Code § 632 ... 1, 17, 19

Cal. Pen. Code § 632.7 ... 20

**RULES**

Fed. R. Civ. P. 15 ... 24

**REGULATIONS**

16 C.F.R. § 313 ... 7

16 C.F.R. § 313.3 ... 21, 22

**INTRODUCTION**

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051; *see also Shah v. Capital One Financial Corp*., 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the ECPA and CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information); *Garcia v. Truist Fin. Corp.*, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) (same).

Defendant Maximus Education, LLC ("Defendant" or "Aidvantage"), a student loan provider entrusted with the sensitive financial information of student loan borrowers, violated by embedding Google Analytics and DoubleClick on aidvantage.studentaid.gov (the "Website"). While Plaintiff and Class Members navigated their private loan accounts, Defendant intercepted and disclosed their private financial communications to Google in real time, so Google could analyze, monetize, and advertise to them. Such conduct is prohibited under the Electronic Communications Privacy Act ("ECPA"), 28 U.S.C. § 2511, *et seq.*, California Penal Code ("CIPA") §§ 631–32, and the California Constitution.

The First Amended Complaint ("FAC") alleges precisely what the courts in *Shah* and *Garcia* have held actionable: transmission to a third party of personally identifiable information (cid, browser fingerprint, IP address, and device information) (FAC ¶¶ 65, 77, 79–80, 98–99), and sensitive financial information ("Custom Events" and detailed URLs) (FAC ¶¶ 64, 96), constitute the disclosure of nonpublic personal information protected under the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA"). Specifically, Defendant unlawfully intercepts and discloses its student loan borrowers' personal and financial information to Google, LLC ("Google")—an unknown third party—when borrowers navigate their private financial portals on Defendant's Website. FAC ¶¶ 88–103 & Figs. 1–5.

Defendant's motion recycles arguments routinely rejected by courts throughout the Ninth Circuit, and Defendant resorts to mischaracterizing the law and facts. But there is a reason why courts

have repeatedly denied similar motions to dismiss involving financial institutions. *See*, *e.g.*, *Shah v. Capital One Financial Corp*., 768 F. Supp. 3d 1033; *Garcia v. Truist Fin. Corp.*, 2026 WL 972328; *Allison v. PHH Mortgage*, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026). It is because Defendant's arguments are incorrect. For the reasons detailed herein, plaintiff respectfully requests this court denied Defendant's motion to dismiss (the "Motion" or "MTD") (ECF No. 19) in full.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

#### A. Plaintiff Adequately Alleges A Concrete And Particularized Injury

Defendant argues "Plaintiff's speculative and conclusory allegations in the FAC fail to show that she suffered a concrete and particularized injury based on her interactions with the Website." MTD at 6. That is wrong. Defendant's argument rests on a mischaracterization of the pleadings, an

outdated view of the law, and a misreading of *Popa v. Microsoft*. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th at 789 (citing *TransUnion*, 594 U.S. at 424). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *2 (N.D. Cal. Jan. 27, 2026) (same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) (same); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (collecting cases).

Defendant suggests that while Plaintiff "makes vague generalizations regarding the type of information Google could . . . collect . . . she does not allege that Google did so with respect to Plaintiff." That is wrong. *See* FAC ⁋ 7 ("Unbeknownst to Plaintiff, Defendant disclosed her personally identifiable information ('PII') to Google—including communications that contained Plaintiff's confidential, "nonpublic personal information" as defined by the GLBA and CalFIPA.

Neither Defendant nor Google procured Plaintiff's prior consent to the sharing of her private and protected information."). Notably, in *Garcia v. Truist*, the court rejected parallel arguments, explaining the court could reasonably infer the plaintiff used the website in the manner described in the complaint. *Garcia*, 2026 WL 972328, at *6 ("Truist contends that Garcia does not specifically allege what Garcia's 'actual experience using the Website' was. . . . But as discussed above, the Court can reasonably infer that Garcia's experience using the website was the same as that of any other loan applicant."). *Garcia* further explained the disclosure of PII on a financial website via tracking technologies the defendant chose to embed was the type of "embarrassing, invasive, or otherwise private information" necessary to confer Article III standing. *Id.* (citing *Popa*, 153 F.4th at 791, n.5); *cf. Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (collecting cases).

Here, Plaintiff is not complaining about the collection of anonymous browsing data like the kind at issue in *Popa*, as Defendant suggests. MTD at 7. Rather she alleges—with example screenshots and detailed allegations—Defendant disclosed to Google, in real time, detailed URLs and Custom Events, alongside her PII. FAC ¶¶ 6–10, 64–65, 77, 79–80, 88–103. The FAC clearly alleges that the Google cid is "uniform across both Analytics and DoubleClick, allowing Google to connect Analytics and DoubleClick interactions to a single user (FAC ¶ 77)" and because Google already possesses Plaintiff's name, e-mail, phone number, gender, and date of birth, Google can and does match this information to a borrower's specific identity. FAC ¶¶ 7, 77, 79–87, 95–99. Browser fingerprinting techniques also identify users with 99.24% accuracy. FAC ¶ 83.

Put simply, Plaintiff's allegations fall squarely within the category of a privacy interest long recognized by California courts. *See generally Shah*, 768 F. Supp. 3d 1033, 1044–45; *Garcia*, 2026 WL 972328 at *5–6, 12; *Jones*, 2026 WL 699819, at *5 (collecting cases); *see also Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656 (1975) ("we may safely assume that the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life"); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) ("sensitive financial information" is legally protected); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. Nov. 23, 2009) ("There can be little question that Plaintiff has a legally protected privacy

interest in his private financial information"); *Moskowitz v. Superior Court,* 137 Cal.App.3d 313, 187 Cal. Rptr. 4, 6 (Cal.Ct.App.1982) ("Personal financial information comes within the zone of privacy protected by Article I, Section 1 of the California Constitution."). Information about a borrower's student loan payments and repayment options is also protected by the GLBA and CalFIPA. FAC ¶¶ 4, 7, 24–38. The unauthorized disclosure of such protected financial information is thus sufficient to confer statutory standing under Article III. *Accord James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 952 (N.D. Cal. 2023) ("to the extent they have referred to webpages viewed, searches conducted, purchase behavior, and so forth" the plaintiffs satisfy Article III standing).

Defendant's suggestion that Plaintiff lacks "actual harm" because she has not alleged a specific instance of targeted advertising (MTD at 8–9) confuses a symptom of the harm with the injury. Whether Plaintiff later received a targeted advertising is irrelevant; the privacy injury occurred the moment Defendant transmitted her communications to Google without consent. *Tash, v. Vision Service Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) ("Defendants are incorrect that [plaintiff's] failure to allege he was subjected to targeted ads because of this disclosure deprives him of an injury worthy of standing … Importantly, 'privacy torts do not always require additional consequences to be actionable.' … The harm inflicted by the intrusion itself permits liability.") (cleaned up); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("the legal injury at the heart of plaintiffs' case -- the capture of personal information without a user's consent -- occurs when the personal information is obtained in the first instance. The fact that misappropriated data may be anonymized by stripping it from its owner and blending it with other data does not cure or wash away the original violation.").

**B. Plaintiff's Injury Is Traceable To Defendant**

Defendant next argues that "the injury she allegedly suffered was not fairly traceable to Aidvantage." MTD at 9. This argument misapprehends Plaintiff's allegations and imposes extraneous requirements not required by law.

Traceability is a low threshold at the pleading stage. Indeed, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume

that general allegations embrace those specific facts that are necessary to support the claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (cleaned up). The injury need not be traceable *solely* to the defendant, it is enough that the defendant's conduct is a cause. Here, Plaintiff's injury arises from Defendant's act of embedding Google's tracking technologies into its own Website and its interception and disclosure of her private communications to Google. FAC ¶¶ 10, 39–42, 88–103. The causal connection is clear: Defendant embedded Google's code into the Website, the code intercepted and disclosed Plaintiff's PII and confidential financial communications to Google, and Google used those communications for its own independent purposes. FAC ¶¶ 8, 10, 87, 88–103. Nothing more is required at the pleading stage. *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025) ("general factual allegations of injury sufficient for purposes of traceability of the challenged action to Defendant, as the line of causation is more than just 'attenuated.'"). Defendant's suggestion that Plaintiff is to blame for having a Gmail account inverts the traceability standard. The relevant question is whether *Defendant's* conduct caused the injury, not whether the Plaintiff could have protected herself from the harm.

Defendant's case law is unavailing. In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the plaintiff self-inflicted an injury to avoid speculative future harm. *Id.* at 416–18. Here, Plaintiff did nothing of the sort. Rather, she used Defendant's Website to manage her student loans, as Defendant required. FAC ¶¶ 8, 36–38. That Plaintiff maintained a Google account does not constitute "manufacturing" standing because Google would not have been able to track her interactions within her student loan portal if Defendant had not embedded the Google Analytics and Google DoubleClick Tracking Technologies into the Website, thus intercepting and disclosing Plaintiff's communications to Google. FAC ¶ 10. That Defendant's conduct could be made worse by Plaintiff's decision to create a Google account does not render the injury non-traceable. It affirms that Defendant's choice to embed Google Analytics and Google DoubleClick caused the harm.

## II. PLAINTIFF STATES A CLAIM UNDER THE ECPA

### A. Defendant Intercepted and Disclosed The "Contents" Of Plaintiff's Communications

Defendant posits the information it intercepted and disclosed to Google is mere "record information," not "contents." MTD at 10–11. That is wrong.

Under both the ECPA and CIPA, courts interpret "content" as being "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" should be construed broadly to include the names of buttons clicked and descriptive URLs. *See e.g. In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute"); *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. June 13, 2022) (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("Content" includes "URLs which disclose search terms that reveal website users' personal interests, queries, and habits."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("The URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits"). *In re Zynga Priv. Litig.* affirms Plaintiff's position, explaining that "[u]nder some circumstances . . . divulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014); *see also Shah*, 768 F. Supp. 3d at 1052–54; *Garcia*, 2026 WL 972328, at *11.

Plaintiff's allegations are clear—the Complaint details, with screenshots, exactly the kind of substantive transmissions that constitute content under CIPA and the ECPA. For example, Figures 1 and 2 depict Defendant intercepting and disclosing to Google information about repayment and

overpayment instructions; similarly Figures 3 and 4 depict disclosures pertaining to forbearance and deferment. FAC ¶¶ 88–103; Figs. 1–4. This is not mere record information as Defendant suggests. Rather, the disclosures reveal (i) that the borrower is attempting to make a payment, (ii) that the borrower is changing her payment directions, and (iii) whether the borrower is experiencing financial hardship. *Id.* Such information constitutes content as it reveals the *substance* of Plaintiff's and other borrower's loan-management instructions to Defendant. *See also infra*-Section III.A.1.

**B. Plaintiff Adequately Pleads An Interception**

Defendant posits that (1) because it "received" Plaintiff's communications directly, no "interception" occurred and (2) the "Amended Complaint does not establish Google read or understood . . . Plaintiff's communications with the Website in real time." MTD at 11–12. Both arguments fail.

As a preliminary matter, "the Ninth Circuit has construed the term [acquisition under the definition of intercept] according to its ordinary meaning as the "act of acquiring, or coming into possession of." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Thus, the relevant inquiry is that a person other than the intended recipient acquires the communication. Whether that acquisition occurs via duplication, diversion, or any other means is immaterial. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("We adopt the First and Seventh Circuits' understanding that simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability . . . the 'paramount objective of the [Electronic Communications Privacy Act, which amended the Wiretap Act] is to protect effectively the privacy of communications.'") (internal citation omitted).

***First,*** Defendant's position that it merely received Plaintiff's communications misapprehends the FAC. Plaintiff explains how the Google Analytics and DoubleClick Tracking Technologies embedded on the Website intercept and disclose Plaintiff's and Class Members' browser communications with Defendant to Google, in real time. FAC ¶¶ 44–49, 58–65, 88–100. That is interception. *Garcia*, 2026 WL 972328, at *11 ("When viewing these allegations on how the [third party tracking technology] works together in combination with the Website . . . it is plausible to infer

that the interception happens in real time.") (cleaned up); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (Tigar, J.) ("At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured."); *Heerde v. Learfield Commc'ns, LLC,* 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (allegations that communications were "replicated and sent in parallel to the tracking entities" sufficient).

Defendant's suggestion that the ECPA does not recognize aiding-and-abetting liability is based on a cherry-picked sentence fragment in the FAC. MTD at 12. However, Defendant misunderstands Plaintiff's allegations. Plaintiff does not rely on secondary liability for her ECPA claims, rather, Plaintiff alleges that Defendant itself "intercept[ed], endeavor[ed] to intercept, [or] procure[d] any other person to intercept" Plaintiff's communications—the full range of conduct prohibited by 18 U.S.C. § 2511(1)(a). FAC ¶¶ 132–133. Defendant actively embedded the Tracking Technologies on its Website to intercept and disclose Plaintiff's communications to Google. FAC ¶¶ 10, 39–42, 88, 102, 132. The statutory text of the ECPA expressly contemplates such conduct. 18 U.S.C. § 2511(1)(a) (creating liability where a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication"). Simply put, Plaintiff's ECPA claim is sustainable under both procurement and direct liability theories. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept. We do not intend our definition of aider and abettor to cover a 'procurer' as used in the statute") (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427–28 (E.D.N.Y. 2006) ("A procurer is not an aider and abettor but one who violates the statute directly")). Courts have consistently found that plaintiffs can plausibly allege direct liability under § 2511(1)(a) when tracking technologies contemporaneously intercept electronic communications. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the

unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."); *see e.g. Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (" . . . [The plaintiffs] allege [the defendants] . . . received their communications with [their] Web Properties, and transmitted their PHI and PII to [an unknown third party] without their authorization . . ." such that they plausibly state an ECPA claim); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (holding under the ECPA it was sufficient the plaintiffs "allege that, after they entered their Search Terms, the Search Terms were replicated and sent in parallel to the tracking entities"); *cf. Semien v. PubMatic Inc.*, 2026 WL 216333 at *7–10 (N.D. Cal. Jan. 27, 2026); *Selby v. Sovrn Holdings, Inc.*, 3:25-cv-03139-RFL, ECF No. 33, at 5–6 (N.D. Cal. Oct. 17, 2025).

***Second,*** Defendant's argument that Google did not "read or [understand]" the "contents" of Plaintiff's communications overstates the pleading requirements. MTD at 12–13. Here, Plaintiff alleges that Google's Tracking Technologies captured and processed the communications in real time as they traveled from her browser. FAC ¶ 71 ("Once Defendant intercepts the Website communications through the DoubleClick API and discloses such information to Google (in real time)"); *id.* ¶¶ 58–65, 93–100, 132–133. Nothing more is required at this stage. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) (Tigar, J.) ("whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question Torres decided only after a full evidentiary record at summary judgment"); *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) ("[A]t the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured. . . . Indeed, a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game, for the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.") (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023) (plaintiff "did not simply recite that there was real time

interception, she added detail on how it occurs"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (finding "detailed description of the pixel and related technology at issue, including screenshots of the source code" sufficient).

### C. Defendant Is Liable Under The Crime-Tort Exception[1]

Defendant argues the ECPA's party exception bars Plaintiff's claims and that Plaintiff failed to allege an underlying criminal or tortious purpose. MTD at 13–15. That is wrong.

The party exception "has its own carve-out known as the crime-tort exception." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 848 (cleaned up). Where the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously[,]" the party exception does not apply. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021).

***First***, Plaintiff alleges tortious and criminal conduct independent of the interception itself. Plaintiff alleges Defendant intercepted—and disclosed—Plaintiff's nonpublic personal financial information to Google in violation of the GLBA and CalFIPA. FAC ¶¶ 24–34, 88–103, 137–139; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (explaining the "intentional disclosure of private information constituted a further impropriety independent and separate from the interception of private information.") (cleaned up); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious."). Both statutes prohibit a financial institution—like Defendant—from disclosing nonpublic personal information to an unaffiliated third party without the consumer's explicit prior consent, and CalFIPA was enacted by the California Legislature to "afford persons greater privacy protections" than the GLBA. Cal. Fin. Code § 4051.

[1] Defendant's passing reference to potential *Yearsley* immunity (MTD at 1 n.1) is addressed *infra* and meritless. *Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *4 (N.D. Cal. Jan. 29, 2026) ("Here, the record does not demonstrate that Nelnet had no discretion in its implementation of Google Analytics and other tools . . . . [the] requirements are high-level and do not demonstrate Nelnet's complete lack of discretion in how to implement Google Analytics throughout its webpage. Accordingly, on this record and without further evidence, Nelnet is not entitled to summary adjudication of its derivative sovereign immunity defense.").

*Shah* is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Shah*, 768 F. Supp. 3d at 1041. The court denied the defendant's motion to dismiss, holding the defendant's actions were allegedly tortious. *Id.* at 1053[2]; *Garcia*, 2026 WL 972328, at *10 (same); *Allison v. PHH Mortgage*, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (finding allegations the defendant "installed trackers on its website to trade customers' sensitive financial information to reduce the cost of marketing services . . . . sufficient to allege a purpose to invade privacy for [the defendant's] profit, which triggers the crime-tort exception"); *Riganian*, 791 F. Supp. 3d at 1090–92 (Tigar, J.) (applying the crime-tort to the ECPA).

Defendant also suggests "[b]ecause an ordinary person would not be able to identify Plaintiff, her interactions with the Website do not constitute PII." MTD at 14. CIPA has no such requirement. That is why the sole case upon which Defendant relies, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), involves the VPPA, which has its own statutory definition of PII. *Contra Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (Under the VPPA "[p]ersonally identifiable information includes information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person"); *cf. Calhoun v. Google, LLC*, 113 F.4th 1141, 1144 n.4 (9th Cir. 2024) ("The x-client-data header is an identifier that when combined with IP address and user-agent, uniquely identifies every individual download[ed] version of the Chrome browser.").

Here, nonetheless, the FAC explains how the information collected from Defendant's website allows Google to personally identify website users. *See* FAC ¶¶ 64-65 ("Google received at least 'Custom Events' and URLs that disclosed the financial services received by the user. Google also received additional PII, including but not limited to the users' IP address, device information, and User-IDs. For example, the Website utilizes Google's 'cid' or 'Client ID' function to identify users as they navigate the Aidvantage Website."); *id.* ¶¶ 92-95 ("Defendant shares its users' PII with its

---

[2] Plaintiff's ECPA claim can also be sustained because consent is central to the dispute. *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) ("Because consent is a factual determination, [whether the one-party exemption applies] cannot be determined on the pleadings"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (Tigar, J.) ("successful assertion of the crime-tort exception negates any consent").

advertising partner, Google. The information shared by Defendant allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving. … For example, when a consumer logs into their Aidvantage account and makes a payment, or opts for deferment options, Defendant discloses such information to Google through its use of Google Analytics and DoubleClick. As shown *infra*, Defendant discloses to Google when users make a payment on their loans (Figure 1), how users allocate overpayments (Figure 2), and the reason users request a forbearance (Figures 3 & 4). Defendant further assists Google by disclosing the personal information sufficient for Google to uncover its users' identities through the HTTP communications, e.g. Figures 1–4, the user's device information, and the user's IP address is inherently included in every network request. In addition to its users' IP addresses, Defendant, through Google's tracking technologies, disclosed information about their specific devices and User-IDs to Google, allowing Google to link such information to an individual's specific identity.").

Courts routinely hold these types of disclosures constitute PII. *Shah v. Fandom, Inc.*, 2024 WL 4539577, at 5–6 (N.D. Cal. Oct. 21, 2024) (holding that "Plaintiffs plausibly allege [in a motion to dismiss] that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information, and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising"); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *4 (C.D. Cal. Jan. 30, 2025) ("The Court finds that Plaintiff has sufficiently alleged that the IP address, in conjunction with the other specific user information that permitted identification of him, was personally identifiable.").

***Second***, Defendant's suggestion that the FAC indicates "a primary motive [] was to monetize analytics data" (MTD at 14–15) does not foreclose Plaintiff's claims. *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *7 (C.D. Cal. 2025) ("a monetary purpose does not insulate a party from liability under the ECPA, at least at the motion to dismiss stage."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply"); *Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. 2024) ("[C]ontrary to [the defendant's] argument that any

alleged interception was for [the defendant's] sole benefit and thus still within the party exception, [p]laintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *Cooper v. Mount Sinai Health Systems, Inc.*, 742 F. Supp. 3d 369, 382 (S.D.N.Y., 2024) (explaining the defendant's "broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.") (collecting cases); *Riganian*, 791 F. Supp. 3d at 1090 (Tigar, J.) ("this Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.").

Defendant's reliance on *Zocco v. Nelnet, Inc.* disregards the weight of authority. *Compare Zocco*, 2026 WL 242037 (dismissing with leave to amend to permit the plaintiff to clarify the underlying GLBA/CalFIPA violations); *with Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 ("Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *Garcia*, 2026 WL 972328, at *10 ("[The defendant] "chose to embed the [tracking technologies] on its Website, which it owns and operates," and, with this tag, [the defendant] then disclosed to [the Third Party] sensitive and confidential information provided by consumers. Therefore, when viewing the facts in [the plaintiff's] favor, the Court finds that [the plaintiff] has plausibly alleged that [the defendant's] purpose was, at the very least, tortious, thereby satisfying the crime-tort exception"). Defendant's reliance on *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732 (D. Mass. 2025), a non-binding, out-of-circuit ruling, is similarly unavailing. *Goulart* only addresses claims under ECPA, not CIPA. *Id.* at *2–3. And, to the extent that *Goulart* supports dismissal, it is directly contrary to Judge Thompson's decision in *Shah*. This Court should follow *Shah*. *See also infra*-Sections III.A.2, III.A.4.

## III. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631

### A. Plaintiff Alleges Google Violates The Second Prong Of 631

Defendant argues "[b]ecause courts apply the same analysis for the party exception under both the Wiretap Act and CIPA, Plaintiff's CIPA claims should be dismissed" and that "Plaintiff

does not plausibly allege Aidvantage acted with the primary purpose of committing a tort independent of the alleged interception." MTD at 16. That is wrong.

As a preliminary matter, Defendant's argument rests on a flawed premise: that because Defendant was a party to the communications, the only way Defendant can be held liable is through the crime-tort exception. MTD at 16. However, unlike under the ECPA, where "[t]he consent of one party is a complete defense to a Wiretap Act claim[,]" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014), CIPA requires consent from all parties. That is not present here, and as such, fatal to Defendant's argument. FAC ¶¶ 5, 7, 10, 33, 141, 150, 153, 168. Thus, there is no reason for the Court to analyze whether Aidvantage's consent to Google's interception is negated by an exception under CIPA. *See Katz-Lacabe v. Oracle America, Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (granting motion to dismiss ECPA claim and denying motion to dismiss CIPA claim). This Court rejected a similar argument in *Gabrielli v. Motorola Mobility LLC.* 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (Tigar, J.) ("the Court rejects [Defendant's] passing contention that it cannot eavesdrop on its own communications because [plaintiff] alleges that the cookies are collecting information on his private activity and information outside of [Defendant's] website—not his communications involving [Defendant]."); *cf. Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090–92 (Tigar, J.) (analyzing the crime-tort exception under the ECPA, but not CIPA § 631(a)).

CIPA § 631 Clause Two imposes liability on any person who "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . ." Cal. Penal Code § 631(a). Plaintiff adequately pleads each element.

**1. <u>Google Intercepted The Contents Of Plaintiff's Communications</u>**

Plaintiff sufficiently alleges that the content of her information was intercepted under CIPA. *Supra* Section II.A.; *see also Brodsky,* 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

**2. <u>Google Read Or Attempted To Read Plaintiff's Communications</u>**

The FAC leaves no doubt that Google reads Plaintiff's communications. Plaintiff explains, in detail, that "Google views and processes every piece of information collected from the Google Analytics tracking technology and DoubleClick API, including the information collected from Defendant's Website, and uses it to assist with data analytics, marketing, and targeted advertising." FAC ¶ 75. By doing this, Google is able to improve its own products and services. FAC ¶¶ 63, 74, 75, 87, 151.

**3. <u>Defendant Never Obtained Plaintiff's Consent To Eavesdrop</u>**

Plaintiff alleges Defendant's installation of the Google Tracking Technologies was done without consent. FAC ¶¶ 5, 7, 10, 33, 39, 41, 141, 150, 153, 168. To the extent Plaintiff purportedly agreed to Defendant's privacy policy (she did not), misrepresenting that Google does not receive identifying information is independently sufficient to sustain Plaintiff's claims. *See Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852 (ECPA, CIPA § 631 (use)); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *4–5 (ECPA); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (CIPA §§ 631–32).

**4. <u>Interception Occurred In Transit</u>**

Plaintiff alleges the interceptions occurred in transit. Specifically, Plaintiff alleges that Google acquires communications "intercepts the Website communications through the DoubleClick API and discloses such information to Google (in real time)." *See* FAC ¶ 71. These transmissions occur "in real time" because "Google Analytics and DoubleClick—as enabled by Defendant—routed Plaintiff's and California Class members' electronic communications to its servers." FAC ¶ 154. A majority of courts within the Ninth Circuit accept allegations of "in transit" interception at the pleadings stage. *See*, *e.g.*, *Cousin*, 681 F. Supp. 3d at 1131 ("Plaintiffs plead that communications were intercepted in transit sufficient to survive dismissal under Rule 12(b)(6). Defendant's arguments . . . are best left for resolution at the summary judgment stage."). Plaintiff even provides examples of Google reading borrowers' communications in real time. *See* FAC Figures 1–4. Additionally, Plaintiff alleges facts demonstrating the interception occurred in California because

according to Plaintiff, she "accessed her account with Aidvantage in California and made loan payments through the Website." FAC ¶ 6.

### B. Defendant Aided And Abetted Google's Unlawful Interception

Plaintiff's First Amended Complaint alleges that "Defendant aided, agreed with, employed, permitted, or otherwise enabled Google to wiretap Plaintiff and members of the Class through Google Analytics." *See*, *e.g.*, FAC ¶ 152. The Complaint is replete with allegations that Plaintiff did not consent to Defendant sharing her personally identifiable information and confidential financial information with non-party Google—nor could she, as Defendant's installation of the Google tracking technologies was unknown to her. FAC ¶¶ 5, 7, 10, 33, 39, 41, 141, 150, 153, 168. When read in conjunction with her allegations that Google uses this information for its own purposes (FAC ¶¶ 10, 70, 74–75, 87, 92, 103), Plaintiff's allegations paint a clear picture: Defendant aided non-party Google's interception of Plaintiff's communications without consent, such that Defendant is liable under the fourth prong of Section 631.[3] Such allegations are routinely held to be sufficient at the motion to dismiss stage. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023) (Tigar, J.) (finding that a plaintiff may state a claim for aiding liability against a defendant if the plaintiff adequately alleges that the third-party software provider has the capability to use the intercepted communications for any purpose other than providing them to the defendant); *Gabrielli v. Motorola Mobility LLC*, N2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (Tigar, J.) ("the Court rejects Motorola's passing contention that it cannot eavesdrop on its own communications because Gabrielli alleges that the cookies are collecting information on his private activity and information outside of Motorola's website—not his communications involving Motorola."); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) ("As discussed above, Plaintiff Tate has pled facts that would support a viable claim that Invoca has violated the statute. Plaintiff's claims that VITAS has supported Invoca in doing so by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a).

[3] Central to Plaintiff's allegations are that she did not consent to Google's tracking of her PII and sensitive financial information. Defendant's own Privacy Policy supports this proposition because it states, incorrectly, that "Google Analytics does not identify individual users or associate your IP address with any other data held by Google Analytics (MTD at 4)."

Accordingly, the Court finds that VITAS may be found liable under section 631(a) for its role in assisting Invoca's monitoring and analysis of calls made to VITAS."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

As Judge Lin explained in *Ambriz v. Google*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025):

> Ninth Circuit courts are frequently called upon to apply the guidance of Ribas and Rogers to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the capability to use the data for its own purposes.

*Id.*, at *3 (emphasis in original).

Here, Plaintiff's allegations are sufficient under either approach. For example, the FAC alleges that "Google has the capability to use and does use the wiretapped information for its own purposes," including targeted advertising. FAC ¶ 149; *see also id.* ¶ 87. Additionally, under the "extension test," the FAC alleges that Google indeed uses the information it collects for its own purposes. FAC ¶¶ 10, 70, 74–75, 87, 92, 103. At this stage, nothing more is required. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) (where the plaintiffs allege defendant had "the ability to use its record of the interaction for other purposes beyond just furnishing them to customer websites, the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement"); *see Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021); *Ambriz*, 2025 WL 830450, at *3; *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) ("[W]hen data is transmitted to an independent entity that uses or is capable of using the data for that entity's own purposes, courts treat the third-party code as an eavesdropper and allow aiding and abetting claims to proceed against the website's owner."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("it is plausible to infer from [defendant's] alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept [PII]"); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024) ("knowingly

'programm[ing] such third-party tracking technology into its website for advertising purposes and to increase its profits'" suffices to plead aiding and abetting); *cf Gabrielli v. Motorola Mobility LLC,* 2025 WL 1939957, at *11 (Tigar, J.) (citing *Zarif v. Hwareh.com, Inc.,* 2025 WL 486317, at *8, 10 (S.D. Cal. Feb. 13, 2025) (explaining that the Ninth Circuit has interpreted the intent standard under the federal Wiretap Act to require only an act being done on purpose, rather than done with the knowledge that it is unlawful, and then applying that analysis to also reject a challenge to CIPA Section 631)). Defendant's knowledge of the unlawfulness of its conduct also flows from the bedrock principle that "every citizen is presumed to know the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020). As a GLBA-regulated financial institution, Defendant unquestionably knew the statutes governing nonpublic personal information; embedding Google's advertising tracker in its logged-in loan portal in the face of that knowledge states derivative CIPA liability.

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632

Defendant argues Plaintiff "cannot sustain a claim under § 632 because cannot 'eavesdrop' on their own conversations . . . . [and] §632 does not provide for 'aiding and abetting' liability." MTD at 19. That is incorrect.

Although not explicit, Section 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31 . . . . In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability." *Smith*, 2025 WL 1085169, at *5. Thus, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026). Thus, Plaintiff plausibly alleges Defendant is liable as an eavesdropper under Section 632 under a theory of derivative liability. FAC

¶ 41 (Defendant "enables Google Analytics and DoubleClick to eavesdrop on those confidential communications using their respective wiretaps.").

Further, a communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) ("The standard of confidentiality is an objective one defined in terms of reasonableness."). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). Even so, Plaintiff has established that she possessed an objectively reasonable expectation that the sensitive details of her activity within her financial account were not being recorded. FAC ¶¶ 2–4, 24–34, 39–42, 101, 167–68; *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199–1200 (N.D. Cal. 2024) (in denying Defendant's motion to dismiss a 632 claim the court emphasized the sensitive nature of financial information submitted to a tax preparation website); *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.") (quoting *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776-77 (2002)).

Defendant also argues dismissal is proper because "[t]his Court has likewise held that § 632 does not apply to Internet communications." MTD at 19, n.17 (citing *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (Tigar, J.)). That is wrong. Had Defendant gone beyond a cursory reading of the opinion, it would have been obvious this Court was primarily addressing § 632.7 of the California Penal Code, ***not*** Section 632.[4] More recently, in *Yockey v. Salesforce, Inc.*,

[4] To the extent Defendant attempts to argue software is not a device under Section 632, such argument is foreclosed by existing case law. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632."); *Smith v. Rack Room Shoes, Inc.,* 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (citing *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856-57 (W.D. Wash. 2024)); *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (collecting cases finding that "software is a device under section 632(a)")).

this Court denied a motion to dismiss claims under § 632 under similar facts. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953–56 (N.D. Cal. 2024) (Tigar, J.).

**V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY**

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only allege (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *8 (N.D. Cal. Jan. 29, 2026) (denying a motion to dismiss the plaintiff's invasion of privacy claim under similar facts); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).

***First***, Plaintiff alleges a legally protected privacy interest in her financial information, and actions taken within her private student loan portal. FAC ¶¶ 3, 6–8, 24–34, 88–103, 172 ("The highly sensitive and personal information of Plaintiff . . . consists of private and confidential facts and information regarding Plaintiff's . . . financial services that were never intended to be shared beyond private communications on the Website and the consideration of finance professionals"). The weight of the authority supports Plaintiff's position. *See*, *e.g.*, *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944–45 ("sensitive financial information [falls into the category of legally protected information]"); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652, 656 ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs").

That interest is reinforced by the GLBA and CalFIPA, which make "nonpublic personal information" confidential as a matter of law. 16 C.F.R. § 313.3; Cal. Fin. Code § 4052.5; FAC ¶¶ 24–34. Indeed, CalFIPA expressly declares the California Legislature's intent "to afford persons greater privacy protections than those provided in Public Law 106-102, the federal Gramm-Leach-Bliley Act." Cal. Fin. Code § 4051(b); FAC ¶ 29. The statutory privacy interests created by the GLBA and CalFIPA bolster the common-law privacy interest California courts have long recognized in confidential financial affairs.

***Second***, Plaintiff's expectation in the privacy of her financial information is reasonable. Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) her identity, (2) IP address,[5] (3) device information, (4) browser fingerprint, (5) status as having student loan debt, and (6) nonpublic URLs with information about her student loans. *See* FAC ¶¶ 3, 6–8, 24–34, 64–65, 77, 88–103, 172. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 *et seq.* (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer); FAC ¶¶ 24–34, 88–103.

Plaintiff's expectations arose in a context where (i) she was required by Defendant to use the Website to manage her loans; (ii) she was interacting within a logged-in, authenticated financial account portal; (iii) her communications with Defendant concerned nonpublic personal financial information specifically protected by federal and state statute; and (iv) Defendant's own Privacy Policy represented that Google "does not identify individual users or associate your IP address with any other data (MTD at 4)." FAC ¶¶ 6, 35–43, 88–103.

***Third***, Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (same). A true holistic consideration in this case should lead to the determination that Defendant's interception and disclosure of Plaintiff's data constitutes an egregious breach. Here, contemporary "social norms" are

[5] Defendant's suggestion that "IP address is not one of the data fields shared with Google" (MTD at 3 n.7) is a merits dispute inappropriate to raise in a motion to dismiss, and as Defendant concedes, contradicted by Plaintiff's allegation that "IP address is inherently included in every network request." FAC ¶ 95.

likely to render the disclosure of student loan status, for instance, as being highly offensive. *See* FAC ¶ 3 ("[M]any student loan borrowers experience feelings of stress, anxiety, and shame related to their student loan debt.").

*Zocco v. NelNet,* Inc. is instructive. There, the court reasoned:

> Plaintiffs allege that Nelnet shared "private and confidential facts and information regarding Plaintiff[s'] ... financial services," and PII that Plaintiffs never intended to be shared "beyond private communications on the Website and the consideration of finance professionals." According to the complaint, the "information shared by [Nelnet] allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." "For example, when a consumer logs into their Nelnet account and makes a payment or opts for repayment options, [Nelnet] discloses such information to Google through its use of Google Analytics." Against this backdrop, Plaintiffs have identified sufficient facts to survive a motion to dismiss.

*Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *8 (internal citations omitted).

Defendant's case law is unpersuasive. The Ninth Circuit explained the inquiry into whether an intrusion is highly intrusive is a holistic one, often not fit to be resolved at the pleadings stage. *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020); *Smith v. Rack Room Shoes, Inc*., 2025 WL 1085169, at *3 (explaining factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss). Here, Plaintiff alleges Defendant, through Google's tracking technologies, disclosed Plaintiff's and other borrowers' IP addresses, device information, User-IDs, along with their nonpublic financial interactions with the Website. FAC ¶¶ 50–103. This information allows Google to link a borrower's specific identity to their nonpublic financial interactions with Defendant in violation of the GLBA and CalFIPA. *Id.*

Defendant's suggestion that Plaintiff forfeited her privacy expectation by (1) remaining logged into Google while making payments, and (2) by purportedly agreeing to its privacy policy

are red herrings.[6] MTD at 20–21. Plaintiff's continued use of her personal Google account does not somehow authorize Defendant—an entirely separate entity—to disclose her nonpublic financial information to Google for advertising. To the extent Plaintiff purportedly agreed to Defendant's privacy policy, misrepresenting that Google does not receive identifying information is independently sufficient to sustain Plaintiff's claims. *Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852 (N.D. Cal. Jan. 23, 2026)(ECPA, CIPA § 631 (use), CDAFA § 502); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *4–5 (N.D. Cal. Aug. 4, 2025) (ECPA, CDAFA § 502); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) (CIPA §§ 631–32); ) *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *10–11 (N.D. Cal. Aug. 29, 2025) (CIPA §§ 631, 638.51); *Casillas v. Six Flags Ent. Corp.*, 2025 WL 3684543, at * (C.D. Cal. Dec. 15, 2025) (ECPA 18 U.S.C. § 2511; CIPA §§ 631, 638.51); *Gabrielli v. Motorola Mobility LLC*, 4:24-CV-09533, ECF No. 40 at p. 16–19 (N.D. Cal. Jul. 14, 2025) (CIPA §§ 631, 638.51); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *6 (N.D. Cal. Nov. 24, 2025) (CIPA §§ 631, 638.51 adequately pled but for tolling deficiency).

## VI. SHOULD THE COURT FIND THE COMPLAINT DEFICIENT, LEAVE TO AMEND IS PROPER

Should the Court identify any deficiency, leave to amend should be freely granted. Fed. R. Civ. P. 15; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality.") (internal quotations omitted); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.") (quoting *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991)). Defendant's request for dismissal with

---

[6] As discussed supra Section I.A., if Defendant had not embedded the Tracking Technologies into the Website, Plaintiff would not have been tracked. Having a Google Account did not embed the Tracking Technologies on the Website—Defendant did. To the extent Plaintiff purportedly agreed to the privacy policy, the misrepresentation regarding Google's anonymous tracking (MTD at 4) is independently sufficient to sustain Plaintiff's claims.

prejudice (MTD at 22) is unsupported. If the Court identifies any pleading deficiency, Plaintiff should be afforded the opportunity to cure it through amendment.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: April 22, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Philip L. Fraietta_*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*