JOHN ATALLAH, CA Bar No. 294116
jatallah@foley.com
FOLEY & LARDNER LLP
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

IRINA KASHCHEYEVA, admitted *pro hac vice*
ikashcheyeva@foley.com
FOLEY & LARDNER LLP
500 WOODWARD AVENUE, SUITE 2700
DETROIT, MI 48226-3489
TELEPHONE: 313.234.7100
FACSIMILE: 313.234.2800

Attorneys For Defendant
MAXIMUS EDUCATION, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALINA ECKFELDT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE,<br><br>*Defendant.* | Case No. 4:25-cv-10217-JST<br><br>**MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Jon S. Tigar<br><br>Date: June 4, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 6 |

**TABLE OF CONTENTS**


I. THE OPPOSITION FAILS TO ADDRESS AIDVANTAGE'S STANDING ARGUMENTS ........ 1

II. PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER THE ECPA. ........ 4

- A. PLAINTIFF CANNOT ESTABLISH DISCLOSURE OF "CONTENTS" OF HER COMMUNICATIONS. ........ 5
- B. INTERCEPTION AND IN-TRANSIT READING OF THE CONTENTS ARE NOT ALLEGED. ........ 6
- C. PLAINTIFF DOES NOT QUALIFY FOR CRIME-TORT EXCEPTION, DOOMING HER ECPA CLAIM. ........ 8

III. PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER CIPA. ........ 9

- A. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A VIOLATION OF THE SECOND PRONG OF § 631. ........ 10
- B. AIDVANTAGE CANNOT BE LIABLE UNDER § 632(A). ........ 12

IV. PLAINTIFF'S INVASION OF PRIVACY CLAIM STILL FAILS. ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................10

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)....................13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................6

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................10

*Charleston v. Nevada*,
423 F. Supp. 3d 1020 (D. Nev. 2019)....................4

*Curle v. Superior Ct.*,
24 Cal. 4th 1057 (2001)....................12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....................11, 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................2

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006)....................6

*Gabrielli v. Motorola, Inc.*,
2025 WL 2155879 (N.D. Cal. June 16, 2025)....................11

*Garcia v. Truist Fin. Corp.*,
2026 WL 972328 (C.D. Cal. Mar. 25, 2026)....................3, 10

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112, (9th Cir. 2014)....................14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................14

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................6

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ........ 11

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) ........ 6

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ........ 6, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 7, 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 6

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. 2026) ........ 3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 4

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*,
30 F. Supp. 2d 1182 (D. Ariz. 1998) ........ 9

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ........ 6, 9

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 7, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2, 3, 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 6

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 14

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Ct. App. 1975) ........ 10

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 12

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025), ........ 3, 9

*Silvers v. Sony Pictures Ent., Inc.*,
402 F.3d 881 (9th Cir. 2005)........ 12

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ........ 4

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999)........ 8, 9

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) ........ 10, 11

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979)........ 10

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 5

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ........ 9, 11, 15

*Zynga, Inc. v. Facebook, Inc.*,
750 F.3d 1098 (9th Cir. 2014)........ 14

**Statutes**

15 U.S.C. § 6802(a) ........ 2

18 U.S.C. § 2510(4) ........ 7

18 U.S.C. § 2511(2)(c)........ 7

Cal. Fin. Code § 4053(a), 4052(a)–(b)........ 2

Cal. Penal Code § 31........ 12

Cal. Penal Code § 631(a) ........ 12

**Regulations**

16 C.F.R. § 313.3(n), 313.1(o)(2)(ii) ........ 2

Plaintiff's Opposition only confirms the fatal deficiencies in the FAC requiring its dismissal. The Opposition repeatedly claims that Aidvantage "shar[ed Plaintiff's] personally identifiable information and confidential financial information with non-party Google." (Opp. at 1, 6, 17.) Contrary to this strawman argument, however, the Figures in the FAC—which Plaintiff admits are examples of borrowers' communications Google intercepted (FAC ¶ 93; Opp. at 16)—show only the transmission of URL paths without sensitive information, anonymous "Client IDs" and device/browser metadata. The Figures disclose no borrower name, no payment amounts, no account balances, and no other fields that personally identify the borrower or reveal his/her actions within Aidvantage's portal. While Plaintiff's claims are expressly premised on the supposed disclosure of PII or confidential financial information, the Figures affirmatively refute that any such disclosure. Because Plaintiff lacks standing and has failed to state any claim despite her prior opportunity to amend, the FAC should be dismissed with prejudice.

## I. <u>THE OPPOSITION FAILS TO ADDRESS AIDVANTAGE'S STANDING ARGUMENTS</u>

***Lack of Injury to Plaintiff***. As explained in Aidvantage's Motion (at 6-9), Plaintiff has failed to establish an injury-in-fact. The FAC alleges Aidvantage's disclosure of only anonymized record information, offering mere speculation about what Google ***could*** do with such information using its own sophisticated technologies. In the Opposition, Plaintiff argues that Google "can and does match this information to a borrower's specific identity." (Opp. at 4 (citing FAC ¶¶ 7, 77, 79–87, 83, 95–99).) But the paragraphs cited by Plaintiff do not allege that Aidvantage provided Google with the information identifying Plaintiff.

In fact, the Opposition admits that Google had previously obtained "Plaintiff's name, e-mail, phone number, gender, and date of birth" directly from Plaintiff. (Opp. at 4.) The cited paragraphs simply describe Plaintiff's theory that Google can identify the user, including through sophisticated but allegedly accurate browser fingerprinting. But while Plaintiff alleges Aidvantage "disclosed [Plaintiff's] personally identifiable information ('PII') to Google—including communications that contained Plaintiff's confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA," Figures 1-4 in the FAC only reveal anonymous CID numbers (numbers that Google assigns to a particular device and browser combination), generic page-category URLs without any search inquiries, and device metadata—none of which identifies Plaintiff. Further, Figures 3-4 are examples of information conveyed when a

borrower applies for various kinds of forbearances. (*See* Mot. at 7 & n.15.) As Aidvantage confirmed in the supporting Declaration, Plaintiff has never made a forbearance request. (ECF No. 16, Gramlich Decl. ¶ 8.) Plaintiff does not contest this, and thus Figures 3-4 do not apply to Plaintiff.

In her Opposition, Plaintiff affirms she does not complain about collection of "anonymous browsing data." (Opp. at 4.) However, the FAC does not credibly allege collection of anything other than anonymous browsing data. Plaintiff alleges that "Defendant disclosed to Google, in real time, detailed URL and Custom Events, ***alongside her PII***" (Opp. at 4, emphasis added), but that is controverted by Plaintiff's admission that Google had received her PII directly from Plaintiff and by the very disclosures cited in Figures 1-4. Plaintiff confirms that Figures at Paragraph 94 are "exactly the kind of substantive transmissions" that are at issue. (Opp. at 7-8, 13.) The FAC contends that ***Google*** can "connect Analytics and DoubleClick interactions to a single user" and can utilize browser-fingerprinting to identify the user (FAC ¶¶ 79, 86.) Logically, any such steps would be undertaken solely by Google, at Google's discretion. Despite a litany of FAC paragraphs cited in the Opposition, none of them alleges that Google engages in browser fingerprinting universally with respect to all users or that Google engaged in those steps with respect to Plaintiff. Further, Plaintiff does not address Aidvantage's arguments regarding users' ability to manage the information that various websites using GA may share with Google. (Mot. at 5.) What remains, therefore, are Plaintiff's allegations about what Google could theoretically do upon receipt of information at Figures 1-4. The Ninth Circuit has found such capability-based allegations insufficient to establish standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791–92 (9th Cir. 2025). (*See also* Mot. at 6-8.)

Ignoring Aidvantage's arguments (Mot. at 7), Plaintiff continues to assert that the information shared by Aidvantage is "protected by the GLBA and CalFIPA." (Opp. at 5.) Even if statutory protections ensured standing (and under *Spokeo*, they do not), Plaintiff does not dispute that these statutes apply only to personally identifiable information.[1] CalFIPA and the GLBA do not provide for a private right of action, and thus have limited caselaw, but the Ninth Circuit interpreted "personally identifiable information" under a similar statute as information that "readily permits an ordinary person to identify a particular individual." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Plaintiff cannot meet this standard; anonymous disclosures in Figures 1-2 cannot establish a violation of CalFIPA or the GLBA.

[1] 15 U.S.C. § 6802(a); 16 C.F.R. § 313.3(n), 313.1(o)(2)(ii); Cal. Fin. Code § 4053(a), 4052(a)–(b).

Plaintiff relies on *Garcia* to argue that the Court can "reasonably infer" she used the Website in the same fashion as other student loan borrowers and has therefore established Article III injury. (Opp. at 4.) But the analysis in *Garcia* did not find that plaintiff could establish standing by referencing other users' experiences; rather, it found that the plaintiff established standing because he plausibly alleged that the defendant disclosed "sensitive PII related to his citizenship, housing, and employment statuses to LinkedIn." *Garcia v. Truist Fin. Corp.*, 2026 WL 972328, at *5 (C.D. Cal. Mar. 25, 2026). Here, the FAC includes Figures demonstrating exactly what information was allegedly disclosed via GA. (FAC ¶¶ 65, 77, 94 & Figures 1-2). This anonymous record data stands in stark contrast to the sensitive financial information allegedly disclosed about the plaintiff in *Garcia*. Under Ninth Circuit law, standing must be "particularized to a plaintiff's circumstances," and reference to "potential harms that ***might*** be associated" with a particular tool are inadequate. *Popa*, 153 F.4th at 791 n.5.[2]

Plaintiff misconstrues Aidvantage's Motion as asserting that Plaintiff could not have suffered an Article III injury merely because she did not receive targeted advertising. (Mot. at 8-9; Opp. at 5.) But that misses Aidvantage's point—which is that Plaintiff could not establish standing based on mere hypothetical risks of future harm from Google's conduct. (Mot. at 9.) Plaintiff alleges only that Google has the ***capability*** to create browser fingerprints and engage in targeted advertising—not that Google actually used such capabilities to target Plaintiff. (Opp. at 5.) Plaintiff's reliance on what Google ***could*** do, absent any allegation of what it actually did—such as, for example, by citing advertisement targeting Plaintiff—is insufficient to state an injury-in-fact. (Mot. at 9.).

Plaintiff also relies on *Frasco* (Opp. at 3), but that case underscores Plaintiff's inability to demonstrate injury-in-fact. There, the defendant disclosed ***identified*** PHI—menstruation data, pregnancy status, and sexual activity details, transmitted alongside persistent identifiers capable of identifying specific individuals—and the court held that subsequent anonymization of that data "does not cure or wash away the original violation." 349 F.R.D. at 579. Here, the opposite is true: Aidvantage disclosed

[2] The other cases Plaintiff cites on standing—*Shah* and *Jones*—are also distinguishable because they clearly involved the transmittal of PII and other sensitive information. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) (transmission of "employment information, bank accounts, credit card eligibility, preapproval and approval, together with identifying cookies); *Jones*, 2026 WL 699819, at *3, 5 (transmission of "names, email addresses, and Facebook/Google account identifiers"). Here, by contrast, Figures 1-2 show that the data actually transmitted does not identify Plaintiff or reveal the substance of any financial transaction.

***anonymized*** data—CIDs, generic page-category URLs, and device metadata—and the fact that a third party might later de-anonymize that data (using information Plaintiff herself voluntarily provided to Google) does not transform the original disclosure into a privacy violation.

***Plaintiff's Alleged Injury Is Not Fairly Traceable to Aidvantage***. In response to Aidvantage's arguments regarding her injury not being fairly traceable to Aidvantage (Mot. at 9-10), Plaintiff acknowledges that the relevant question is whether "***Defendant's*** conduct caused the injury" (Opp. at 6, emphasis in original.) Plaintiff further admits that the alleged injury is de-anonymization and potential misuse of Plaintiff's data. (Opp. at 4.) Since the information shared by Aidvantage in Figures 1-2 is anonymous and the identification of Plaintiff and disclosure of her PII "depends on the unfettered choices made by" Google, Plaintiff cannot establish standing. *Lujan v. Defs. of Wildlife* , 504 U.S. 555, 562 (1992).

Plaintiff's Opposition argues traceability is a "low threshold." (Opp. at 5–6.) Even so, the FAC's allegations demonstrate that Plaintiff's injury was not caused by Aidvantage. First, the FAC alleges that ***Google***, "upon receiving information from the Website," independently deploys browser-fingerprinting techniques to identify users. (FAC ¶ 79, emphasis added.) The FAC leaves no doubt that any attempts at identifying Plaintiff and using her information are done by Google. (FAC ¶¶ 79, 86, 87, 133.) The alleged injury, properly defined, stems from actions by Google, not Aidvantage. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) (injury not fairly traceable where it "results from the independent action of some third party not before the court"); *Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1028 (D. Nev. 2019) (no traceability where defendant's conduct is merely "attenuated cause of Plaintiff's injuries").

Further, Plaintiff also acknowledges that her own disclosures to Google allowed Google to identify Plaintiff more easily. (Opp. at 4 ("***because*** Google already possesses Plaintiff's name, e-mail, phone number, gender, and date of birth, Google can and does match this information to a borrower's specific identity").) Plaintiff's injury thus depends on her own voluntary conduct: she created a Google account, shared her PII with Google, and chose to remain logged in while using the Website.[3] (FAC ¶¶ 6–7.) It was thus Plaintiff—not Aidvantage—who furnished Google with the necessary PII to link CID to her name.

## II. <u>PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER THE ECPA.</u>

[3] Plaintiff asserts that Aidvantage "required" her to use the Website (Opp. at 6), but this is untrue. (Mot. p. 8-9.) Aidvantage offers multiple other options for borrowers and Plaintiff has herself made payments via phone. (Gramlich Decl. ¶¶ 4, 9.) Plaintiff does not dispute this evidence.

### A. Plaintiff Cannot Establish Disclosure of "Contents" of Her Communications.

As explained in Aidvantage's Motion (at 10-11), the ECPA requires disclosure of "contents"—i.e., the intended message conveyed by the communication, not "record information regarding the characteristics of the message." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024). The Opposition (at 7) characterizes Figures 1 and 2 as the transmissions that constitute contents. However, the data fields in Figures 1-2 consist of URL paths indicating general page categories (*e.g.*, a payment submission page—not what user did on that page), anonymous CIDs, and device/browser metadata like screen resolution, browser language, and operating system version. (FAC ¶¶ 65, 77, 94 & Figs. 1–2.) Figures 3 and 4 depict disclosures pertaining to forbearance and deferment requests, but Plaintiff has not alleged that she had ever submitted such a request. (Mot. at 7, n.15; ECF No. 16, ¶ 8.) None of the fields at Figures 1 and 2 discloses who Plaintiff is, what payment amount she entered, what repayment instructions she selected, or any of her other substantive interactions with the Website.

The Opposition also refers to "custom events" triggered in GA when a user performs a specified action, thereby signaling to Google that an unidentified user triggered a particular event on the Website (e.g., visiting a payment page). (FAC ¶¶ 64, 99-100; Opp. at 1, 4, 7-8.) But even if Google knew Figures 1-2 related to the same user, Google would not know the ***substance*** of that user's interaction with the Website—like the dollar amount, the allocation instruction, or the financial decision conveyed—or sensitive topics on the user's mind. Likewise, a URL showing that a user visited a "payment submission" page does not reveal whether the user engaged with this page. And Figures 3-4, which pertain to forbearance, ***do not apply to Plaintiff***—something the Opposition does not contest. Thus, the "custom event" and URL information are more akin to a passerby seeing a stranger enter a bank, but not knowing the name of the passerby or what he is doing at the bank: a drastically different scenario than a wiretapper or eavesdropper intercepting sensitive financial information. In no sense could it be said that the observer in the former scenario has learned the "substance" of the stranger's communications with the bank teller once inside, which is what Plaintiff must establish to meet the "contents" element under the ECPA. *See Popa,* 153 F.4th at 791 (analogizing website-navigation monitoring to "a store clerk's observing shoppers . . . to identify aisles that are particularly popular").[4] Under well-established (and undistinguished) Ninth

[4] Plaintiff cites a handful of cases holding that website URLs may constitute "contents" where they reveal

Circuit precedent, disclosures of the type at Figures 1-2 do not constitute "contents." (Mot. at 10-11, citing *Zynga*); *see also In re Apple Data Priv. Litig*., 2026 WL 146025, at *7 (N.D. Cal. Jan. 20, 2026).

**B. Interception And In-Transit Reading Of The Contents Are Not Alleged.**

As Aidvantage explained in its Motion (at p. 11-13), the ECPA requires that the "contents" of the communication be "intercepted" and that the same contents be "read or understood" while in transit. Plaintiff's Opposition confirms that Plaintiff cannot satisfy these requirements.

***No Interception.*** In response to Aidvantage's argument that the ECPA does not allow for "aiding and abetting" or secondary liability (Mot. at 12), Plaintiff concedes that she "does not rely on secondary liability for her ECPA claims." (Opp. at 9-10.) Since the core theory in the FAC is about ***Google***'s interception of Plaintiff's communications (*see, e.g.*, FAC ¶¶ 132 ("Google intentionally intercepted and eavesdropped upon Plaintiff's electronic communications with the Website"), 133 ("Google read and/or learned the contents and meaning of these … communications"), 149 ("Google has the capability to use … the wiretapped information for its own purposes")), this concession is fatal to Plaintiff's ECPA claim.

Plaintiff likewise fails to address the well-established caselaw within the Ninth Circuit "reject[ing] the notion that a defendant may be held liable for . . . 'procuring' an interception." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026); *see also Herzer v. Redstone*, 2018 WL 5094933, at *6 (C.D. Cal. July 10, 2018) (holding that ECPA does not provide civil liability for "procurement violations") (citing *Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006)). Aidvantage cannot be held liable for "procuring" Google to intercept Plaintiff's communications.

Plaintiff next suggests that Aidvantage's installation of GA and DoubleClick constitutes "interception" under the "duplication" theory in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

---

personal interests, queries, and habits by reflecting underlying "search terms" used. (Opp. at 7.) But each of these cases involves transmission of user-generated expressive input that itself revealed the substance of a communication. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (URLs disclosed patients' medical search terms and names of conditions, such that the URL itself reflected the user's intended message); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) ("Search Terms were replicated and sent in parallel to the tracking entities"); *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("contents" found where URLs "disclose[d] search terms that reveal website users' personal interests, queries, and habits"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) (URLs deemed content where they reflected "personal interests, queries, and habits"). In each case, the data conveyed the substance of the user's intended message. Here, by contrast, Figures 1-2 show no search terms, no financial figures, no personal identifiers, and no other user-generated input within the URLs or "custom events" disclosed.

589, 608 (9th Cir. 2020). (Opp. at 8-9.) But *Facebook* addressed the party exemption under 18 U.S.C. § 2511(2)(c), not the requirement of intercepting the communication discussed in Aidvantage's Motion (at 11-12). *Facebook* expressly declined to address elements besides the party exemption. 956 F.3d at 608.[5]

Further, Plaintiff alleges that ***Google***, not Aidvantage, intercepts and collects the data through its GA tool. As Plaintiff acknowledges, for the interception to be met, "the relevant inquiry is that a person ***other than the intended recipient*** acquires the communication." (Opp. at 8, emphasis added.) If Aidvantage itself does the interception, this requirement is not satisfied.

Moreover, the FAC cannot allege that the "contents" of Plaintiff's electronic communications with Aidvantage were intercepted via GA or DoubleClick. "Communications" that are allegedly intercepted by Google are featured in Figures 1-4. (Opp. at 16.) But as described in Section II.A *supra*, these Figures do not disclose "contents" of one's communications with Aidvantage. Thus, the FAC does not allege Aidvantage's interception of the "contents of any … communication" under 18 U.S.C. § 2510(4).

***No In-Transit Reading Or Understanding Of Contents.*** Plaintiff suggests she does not have to plead contemporaneous reading or understanding of the contents of Plaintiff's communications with Google at this stage, as plaintiffs are not required to engage in a "guessing game" as to how communications were captured. (Opp. at 10-11.) But far from having to engage in a guessing game, the FAC describes the precise mechanism by which Google allegedly de-anonymizes the data in order to read the communication—all ***after*** receiving anonymous information of the type at issue in Figures 1 and 2. (*See, e.g.*, FAC ¶¶ 71, 79, 86, 95; *see also id.* ¶ 61-62.) Each of these paragraphs confirms that no "contents" are read or learned at the time Google intercepts Figures 1-4. Rather, Google must first receive

[5] Even in the context of the party exemption, *Facebook* is inapposite. There, the intercepted communications were "GET requests" sent from the plaintiff social media users' web browsers to the third-party websites they sought to access; meanwhile, Facebook, the defendant, had utilized "plug-in" software to simultaneously duplicate the GET requests and transmit them to Facebook's servers without the users' knowledge, in order to compile the users' browsing histories to sell to advertisers. 956 F.3d at 607. Thus, because the intended recipient of the social media users' GET requests were third-party websites, not Facebook, Facebook's "simultaneous, unknown duplication" of such communications made it an "unseen auditor" rather than a party to the communications, and it therefore was not exempt from liability under the party exception. *Id.* at 608. Here, by contrast, Plaintiff alleges that she intended to communicate with Aidvantage directly, such that Aidvantage was ***the intended recipient*** of the communications—justifying Aidvantage's reliance on the party exemption. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118–19 (S.D. Cal. 2023) (making the same distinction to apply party exemption).

the anonymized data, then match it against information Google independently possesses, before any substantive meaning can be derived. The FAC affords no plausible inference that an "intercepted" communication can be read or understood in real time—in fact, the FAC prevents any such inference.

**C. Plaintiff Does Not Qualify For Crime-Tort Exception, Dooming Her ECPA Claim.**

As Aidvantage explained in its Motion (at 13-15), Plaintiff cannot show that Aidvantage acted with the purpose of committing a tort independent of the interception itself, so as to qualify for the crime-tort exception. Plaintiff agrees she must show that Aidvantage's "primary motivation or a determining factor in [enabling GA] has been to injury plaintiffs tortiously" (Opp. at 11), but argues that: (i) Aidvantage's conduct violated the GLBA and CalFIPA; and (ii) a monetary purpose or financial motive does not "inoculate[] a defendant from liability." (Opp. at 11-14.) Neither argument is persuasive.

***First***, Plaintiff fails to establish a predicate violation of GLBA or CalFIPA to supply the requisite tort. Plaintiff's Opposition does not contest that an ordinary person would not be able to identify Plaintiff or substance of any transactions Plaintiff engaged in based on the FAC Figures. (Opp. at 12.) Plaintiff misconstrues Aidvantage's Motion as arguing that ***CIPA*** requires that an "ordinary person" must be able to identify the plaintiff based on the disclosure. (Opp. at 12.) What Aidvantage argues instead is that there is no predicate violation of ***GLBA or CalFIPA*** because those statutes only prohibit disclosure of "nonpublic personal information" (GLBA) or "personally identifiable financial information" (CalFIPA). As explained in the Motion (at p.10-12) and at Section II.A above, the FAC's allegations and Figures indicate only anonymized technical and navigational data—URL paths reflecting page categories, anonymous Client IDs, and device/browser parameters; they do not share the borrower's identity, payment amounts, account data, or other person-specific financial facts. (*See* FAC ¶¶ 65, 77, 94 & Figs. 1–2.) Those allegations do not plausibly allege a GLBA/CalFIPA violation.

***Second***, while Plaintiff argues that a profit motive does not entirely foreclose application of the crime-tort exception, she entirely disregards her affirmative obligation to show an ***independent*** tortious purpose beyond the interception itself. (Opp. at 13-14; Mot. at 13-15.) Plaintiff cannot satisfy the crime-tort exception because she cannot show a ***tortious purpose beyond the interception itself***. *See Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) (interception has tortious purpose only when "done for the purpose of facilitating some further impropriety, such as blackmail"); *Med. Lab. Mgmt. Consultants v.*

*ABC, Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Ariz. 1998), *aff'd*, 306 F.3d 806 (9th Cir. 2002) (crime-tort exception inapplicable where complaint only relied on arguments for liabilities for the underlying torts).

In this regard, Judge Wise's decision in *Zocco* is directly on point. Plaintiff relies on *Zocco* and calls it "instructive." (Opp. at 11 & n.1 & 23.) And it is, as it involved nearly identical allegations relating to installation of GA made against another student loan servicer pursued by the same counsel. *Zocco* correctly applied Ninth Circuit law holding that a tortious purpose only exists if interception is "done for the purpose of facilitating some further impropriety, such as blackmail." *Sussman*, 186 F.3d at 1202. The *Zocco* court acknowledged that the crime-tort exception may apply even where a defendant is "motivated by monetary gain," but nonetheless held Nelnet's alleged violations of CalFIPA and the GLBA were insufficient to establish the crime-tort exception because plaintiff did not allege sufficient facts to support "that the purpose of the interception was to perpetuate a crime or tort." *Zocco*, 2026 WL 242037, at *5-6.

The same is true here. While the FAC repeatedly asserts that the information was intercepted for "targeted advertising purposes" (FAC ¶¶ 10, 134) and that the disclosure itself was unlawful, it never alleges that Defendant disclosed Plaintiff's financial information "for the purpose of committing a criminal or tortious act . . . separate from the act of disclosure." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *3 (W.D. Wash. Mar. 4, 2026) (dismissing ECPA claim despite near-identical allegations to the FAC that the interception was "for the purpose of committing a criminal or tortious act"). The only alleged "purpose" is the disclosure itself—which is precisely the circular allegation that *Zocco*, *Nichols*, *Lakes*, and *Goulart* have found insufficient. (Mot. at 13-15.)[6]

## III. PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER CIPA.

[6] Plaintiff cites *Gaige*, but there the defendant received compensation from Facebook in exchange for patient data, that the purpose was to violate HIPAA's criminal penalty provision for "commercial advantage," and that the plaintiff received targeted medical advertisements as a result. Gaige Compl. ¶¶ 137–142, 220, 232–234. Plaintiff also cites *Shah*, but there, the court failed to properly apply the Ninth Circuit's holding from *Sussman* requiring a tortious purpose beyond the interception itself, and instead found that the crime-tort exception was met merely because the interception "resulted in tortious acts." *Shah*, 768 F. Supp. 3d at 1053. Finally, the complaint in *Garcia* alleged that defendant embedded LinkedIn's Insight Tag on its online loan application, and that the tag transmitted the plaintiff's specific form-field entries, including his citizenship status, housing status, and employment information, as he typed them into the application. Garcia Compl. ¶¶ 5, 30, 65-67. *Garcia* cited the *Sussman* standard that the purpose of the interception must be separate from the act of interception, and the "intercepting party must also have the independent criminal or tortious purpose at the time the interception was made," but the court seems to have disregarded this standard. 2026 WL 972328, at *10. The cases cited in Aidvantage's Motion (at p. 13-15) and Plaintiff's own Opposition (at p. 11) establish that the crime or tort can't be the interception itself.

### A. Plaintiff Has Not Plausibly Alleged a Violation of the Second Prong of § 631.

As explained in Aidvantage's Motion (at 16-17), Aidvantage cannot be liable for violating § 631 under the fourth sentence of that section because Google did not violate the first three sentences of § 631. In her Opposition, Plaintiff abandons claims under the first and third sentences of § 631, and focuses on the second and fourth sentences. (Opp. at 15, 17-19.) However, the Opposition attempts to circumvent the "party" exemption in the CIPA by arguing that, unlike the ECPA, the CIPA requires consent from all parties to avoid liability under the second sentence. (Opp. at 14–16.) Plaintiff's argument conflates the requirement of absence of all parties' consent in order to satisfy all CIPA claim elements with the judicially-made but well-recognized party exemption, which does not require all parties' consent. *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023) (observing the same distinction).

Plaintiff's argument as to the party exemption is squarely foreclosed by the Ninth Circuit case law. Indeed, in her Opposition, Plaintiff acknowledges that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." (Opp. at 15.) As discussed in the Motion (at 16), with no response from Plaintiff (Opp. at 15), the Ninth Circuit has applied the same analysis for both the ECPA and the CIPA regarding the party exemption. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020) ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."); *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) ("a party to a conversation cannot be liable under section 631 for 'eavesdropping' on its own conversation") (citing *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Ct. App. 1975)); *Warden v. Kahn*, 99 Cal. App. 3d 805 (1979) (§ 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation").[7] Because of this and because the party to the conversation cannot eavesdrop on its own conversation, the *Zocco* court correctly applied a party exemption to both ECPA and CIPA claims in an identical situation involving a student loan servicer enabling GA on its website. *Zocco*,

[7] *See also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145, 152 (3d Cir. 2015) (affirming dismissal of CIPA claims because ECPA's party exemption applied); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024), *on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing ECPA ***and*** CIPA claims given plaintiff's failure to establish crime-fraud exception); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (session replay vendor FullStory was extension of the operator such that sharing a record is not eavesdropping); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) (party exemption barred all claims because the operator was intended recipient of communications, and later disclosure to Zendesk was not actionable).

2026 WL 242037, at *6, n.6. This Court should follow Judge Wise's decision in *Zocco.*

Plaintiff cites to *Gabrielli v. Motorola, Inc.*, 2025 WL 2155879 (N.D. Cal. June 16, 2025) (Tigar, J.), but in *Gabrielli*, this court declined to apply CIPA's party exemption because the complaint alleged that Motorola's tracking technology placed persistent cookies that continued to monitor the plaintiff's browsing activity across the internet—including on third-party websites—after she left Motorola's website, such that Google intercepted communications" in which "neither Motorola nor Google was a party." *Id.* at *6. Here, no such extraterritorial tracking is alleged, and the FAC's claims are confined to Plaintiff's interactions with Aidvantage's own Website, establishing that it was a first party to all of the communications at issue. *Gabrielli* proves the rule that parties cannot be held liable under § 631 for "eavesdropping" on their own conversations. *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1.

Regardless of applicability of the party exemption, Plaintiff's § 631 claim fails because, for the reasons discussed in Section II.B *supra*, Plaintiff cannot satisfy the elements of "reading or learning" "contents or meaning" of her communications while they were "in transit." (*See* Mot. at 17-18.) Plaintiff argues in her Opposition that the intercepted communications here must have been read "in real time" because she has alleged that Google's technologies "routed Plaintiff's . . . electronic communications to its servers." (Opp. at 16-17.) This is akin to arguing that a substance of an encrypted or redacted email sent at a particular time must have been ***read*** or ***learned*** at that same time. The clear language of CIPA § 631 and the interpretive law does not permit such an inference. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (dismissing CIPA claim where a filtering operation occurred 0.2 seconds after transmission of data to Meta, and CIPA requires contents to be read while in transit "from the person sending the communication to its intended recipient"); *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (CIPA claim dismissed where third parties were not alleged to secretly listen to communications while in transit).

The FAC establishes that, at best, Google can identify the person after Google receives the anonymous information at Figures in FAC ¶ 94 and matches it to its own information. (FAC ¶¶ 61-62, 71, 79, 86, 95.) Without allegations that Google could read or learn the contents of the communication in transit (between Aidvantage and Google), CIPA claim fails. *See Doe*, 806 F. Supp. 3d at 1118 (to be liable under § 631, "you must do something more than just intercept the communication while it is in transit").

Finally, as explained in the Motion (at p.15), without any dispute from Plaintiff, the rule of lenity requires construing any statutory ambiguity in this penal statute in Aidvantage's favor.

**B. Aidvantage Cannot Be Liable Under § 632(a).**

As Aidvantage explained in its Motion (at pp. 18–19), Plaintiff's § 632 claim independently fails because the statute does not support derivative liability, and Aidvantage—as a party to the communications at issue—cannot itself have "eavesdropped" on its own conversations. Unable to dispute that Aidvantage cannot eavesdrop under § 632 because it was a party to its conversation with Plaintiff, Plaintiff deflects to arguing that Aidvantage is liable under § 632(a) for aiding and abetting Google. The Court should reject Plaintiff's argument that CIPA § 632 allows for derivative liability. (Opp. at 19-20.) The statute lacks the "aids, agrees with, employs, or conspires with" language that the California Legislature expressly included in Section 631(a). *Compare* Cal. Penal Code § 631(a) with § 632(a). Under the *expressio unius* canon, the clear intent of the California legislature was to exclude aiding and abetting liability from § 632. *See, e.g.*, *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (where a statute includes language in one section but omits it in an adjacent section, the omission is intentional). Plaintiff's aiding and abetting theory under § 632 should be rejected in light of the Legislature's explicit decision to omit derivative liability from this provision.

Plaintiff cites Cal. Penal Code § 31 —a general provision from the California penal code defining "principals"— to argue in favor of "implicit" aiding and abetting liability. (Opp. at 19-20.) But if § 31 independently provides derivative liability for all penal statutes, the Legislature's inclusion of "aids, agrees with, employs, or conspires with" in § 631(a) would be surplusage—a result that conflicts with bedrock principles of statutory construction. *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *10 (N.D. Cal. Oct. 15, 2025); *Curle v. Superior Ct.*, 24 Cal. 4th 1057, 1063 (2001).

The Court should also reject the § 632 claim based on Plaintiff's failure to plausibly allege a "confidential communication." As explained in the Motion (at 19-21), the information disclosed—URLs, CIDs, IP addresses, and device/browser parameters—does not convey the "thoughts or ideas" that define a protected "communication" under § 632. *In re Apple*, 2026 WL 146025, at *7 (N.D. Cal. Jan. 20, 2026) (device type, screen resolution, keyboard language, user taps, and IP addresses are "'non-content-based conduct coincident to the communication' as opposed to part of the 'communication' itself"). Plaintiff

asserts in the Opposition (at p. 20) that her communications within the loan portal were "confidential." That may be true, but that is not what was allegedly disclosed to Google. The concrete allegations in the FAC identify only anonymized telemetry and generic page-category URLs—not substance-bearing inputs or identity-linkable financial figures. "No reasonable consumer would expect to engage in a transaction [on the internet] without some data being collected . . . to process that transaction." *Apple*, 2026 WL 146025, at *5-6 ("California courts presume that internet communications do not give rise to a reasonable expectation of privacy, in part because they are written communications that are by their very nature recorded"); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (same).

## IV. PLAINTIFF'S INVASION OF PRIVACY CLAIM STILL FAILS.

As Aidvantage explained in its Motion (at pp. 19–22), Plaintiff's invasion-of-privacy claim fails because: (i) Plaintiff lacked reasonable expectation of privacy in the anonymized record information allegedly disclosed; and (ii) the alleged intrusion does not constitute an "egregious breach of social norms" because GA is ubiquitous and the information disclosed consists only of anonymized record information. The Opposition does not overcome these fatal defects.

***No reasonable expectation of privacy.*** Plaintiff argues she had a reasonable expectation of privacy in "sensitive financial information" or "private financial information" that she disclosed to Aidvantage during her login sessions. (Opp. at 21.) Aidvantage does not dispute this. What Aidvantage disputes is that such information was ever shared with Google. As explained in Section II.A *supra*, the allegations in the FAC demonstrate that no such information was disclosed to Google through the Website.

Plaintiff names six categories of information she allegedly had a reasonable expectation of privacy in: "(1) her identity, (2) IP address, (3) device information, (4) browser fingerprint, (5) status as having student loan debt, and (6) nonpublic URLs with information about her student loans." (Opp. at 22.) But as explained in the Motion, Aidvantage decidedly did not disclose Plaintiff's identity or status as a student loan borrower to Google (Mot. at 7, 14), nor did it disclose her IP address. (Mot. at 3 & n.7.) Indeed, Plaintiff's own Figures 1-4 demonstrate that IP address is not one of the data fields shared with Google, such that the Court can disregard Plaintiff's conclusory assertion that "the user's IP address is inherently included in every network request." (Opp. at 13; FAC ¶ 95); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, (9th Cir. 2014) (court need not accept allegations contradicting documents

incorporated into the complaint by reference). The remaining categories (and IP address, too) refer to the type of record information that is insufficient to give rise to a reasonable expectation of privacy. *See Zynga, Inc. v. Facebook, Inc.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (no reasonable expectation of privacy in the URL of a website or in basic identification information); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022) ("name, address, and subscriber number or identity is record information," and "URLs are record information when they only reveal a general webpage address and basic identification information"); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (no standing despite collecting IP address, geolocation data, and email address).

Plaintiff's suggestion that Aidvantage's Privacy Policy contained a "misrepresentation" (Opp. at 24 & n.6) actually illustrates the absence of any privacy violation. The Privacy Policy disclosed that "Google Analytics does not identify individual users or associate your IP address with any other data held by Google Analytics." (Mot. at 4; Gramlich Decl. ¶ 11.) The FAC's own Figures 1 and 2—the only exhibits relevant to Plaintiff's claims—are entirely consistent with that disclosure: the data fields Aidvantage actually transmitted consist of anonymous CIDs, generic page-category URLs, and device/browser metadata. None of these fields identifies Plaintiff or any other individual user. The FAC does not allege facts that would support an inference of "misrepresentation" because what was disclosed to Google is exactly what the Privacy Policy described—non-identifying analytics data.

Plaintiff's theory that Google can ***later*** identify users through post-receipt fingerprinting (FAC ¶ 79) does not transform Aidvantage's accurate description of the disclosure into a misrepresentation. If anything, it confirms that any identification depends on Google's processing using information Plaintiff herself provided to Google when she created her Gmail account (FAC ¶ 7) and Plaintiff's Google settings (Mot. at 5 & n.10-12). Not only did Plaintiff disclose this information voluntarily, but she was aware, based on Google's Privacy Policy, that when she visits a website that uses GA, her "web browser automatically sends certain information to Google."[8]

***No Highly Offensive Intrusion.*** Plaintiff's allegations fall far short of pleading a "highly offensive" intrusion. (Mot. at 21–22.) Plaintiff highlights the ubiquity of GA across the Internet (FAC ¶ 56), while simultaneously arguing that Aidvantage's use of GA on its Website egregiously deviated from

---

[8] https://policies.google.com/technologies/partner-sites?hl=en-US.

social norms. A review of ¶¶ 50–103—the paragraphs Plaintiff cites for the "egregious breach"—underscores how far the FAC falls from that standard. (*See* Opp. at 23.) These paragraphs merely describe Google's corporate background (¶¶ 50–56); how GA adds "JavaScript measurement code to each page on the site"—the same ubiquitous technology that Plaintiff alleges operates on the majority of websites across the Internet (¶¶ 56-58); how Google's data-processing chain works (¶¶ 61-62); and how Google generally collects data from "thousands of websites" and uses browser-fingerprinting techniques to identify users (¶¶ 72–75, 79–87). And when the FAC finally arrives at what Aidvantage ***actually*** disclosed about Plaintiff (Figures at ¶ 94), the data consists merely of anonymous CIDs, generic page-category URLs, and device metadata—the same non-identifying telemetry that millions of websites transmit every day through the same GA tool. Plaintiff cannot describe GA as one of the most common analytics tool on the Internet and yet claim GA results in "egregious breach of social norms."

Plaintiff relies on *Zocco* to support her invasion of privacy claim (Opp. at 23), but *Zocco* is distinguishable. In *Zocco*, Nelnet disclosed to Google the last four digits of borrowers' cell phone numbers and partial email addresses—concrete, partially identifying personal data—with information sufficient to allow "Google to know the identities of specific individuals as well as information related to the financial services they are receiving." *Zocco*, Case No. 25-cv-04470 (N.D. Cal.), Dkt. 1, ¶¶ 32, 72, 74. The court refused to dismiss Nelnet's privacy claim because these disclosures included "the last four digits of a user's cell phone, and a user's partial email address" and thus plaintiff had "identified sufficient facts to survive a motion to dismiss." *Zocco*, 2026 WL 242037, at *1, 8 (citing *Zocco* Compl. ¶¶ 72–73, 142). Here, by contrast, the FAC alleges the disclosure of only anonymous CIDs, general page-category URLs, and device/browser metadata. (FAC ¶ 94 & Figs. 1–2.) The qualitative gap between partial phone numbers and email addresses and anonymous CIDs and generic URLs matters under the "holistic" standard for assessing whether an intrusion is highly offensive.

Plaintiff does not dispute that she interacted with the Website after accepting Google and Aidvantage's privacy policies. (Mot. at 4–5, 20–21.) Though Plaintiff quibbles with the accuracy of Aidvantage's Privacy Policy, the GA-related disclosures in both this and Google's Privacy Policy further negates her assertion she was "highly offended" by disclosure of anonymized record data to Google via one of the most common tools on the Internet.

DATED: May 13, 2026

**FOLEY & LARDNER LLP**
John Atallah

*/s/ John Atallah*
John Atallah
Irina Kashcheyeva
(admitted *pro hac vice)*
Charles W. Niemann
(*pro hac vice forthcoming)*
Attorneys for Defendant
MAXIMUS EDUCATION, LLC D/B/A AIDVANTAGE