United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINA CHEN, et al.,<br>Plaintiffs,<br>v.<br>MAXIMUS EDUCATION, LLC,<br>Defendant. | Case No. 25-cv-10217-JST<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: ECF No. 18 |

Before the Court is Defendant Maximus Education, LLC, d/b/a Aidvantage's motion to transfer under 28 U.S.C. § 1404(a). ECF No. 18. The Court will grant the motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff Malina Eckfeldt received notice via email that she had been assigned Defendant Maximus Education, LLC d/b/a/ Aidvantage ("Aidvantage") as her federal student loan servicer. ECF No. 15 ¶¶ 35–37. Aidvantage is a limited liability company incorporated in Delaware with its principal place of business in McLean, Virginia. ECF No. 18 at 6. Eckfeldt is a resident of Redway, California. ECF No. 15 ¶ 6.

After the initial notice, Eckfeldt received numerous emails from Aidvantage instructing her to create an online account to check her loan details, access secure documents, update her communication preferences, and make payments. ECF No. 15 at ¶¶ 35–38. The emails did not include any information about alternative methods of payment, *id.* ¶ 37; ECF No. 23 at 12, even though mail, phone, and autopay are available. ECF No. 16 ¶ 4. In September 2025, Eckfeldt signed up for an online Aidvantage account to manage her loan payments. ECF No. 16 ¶ 7. To register for an account, Eckfeldt was required to scroll through a text box that contained

United States District Court
Northern District of California

Aidvantage's Terms of Use and affirmatively click a button labeled "Accept" to view her loan information. ECF No. 18 at 7–8; ECF No. 16 ¶¶ 5–6; ECF No. 16-1.

The Terms of Use include a forum-selection clause wherein the "[borrower] and Aidvantage agree to submit to the personal and exclusive jurisdiction and venue of the state and federal courts located within Fairfax County, Virginia." ECF No. 16-1; ECF No. 16-2 at 6. Above the button to which users must click to accept the Terms of Use, the webpage displays a line of text which reads: "By selecting the ACCEPT button below, I am acknowledging that I have read, understood, and agree to the **Website Terms of Use**." ECF No. 16-1 (emphasis in original). As such, Aidvantage claims that this action would be "appropriately venued" in the United States District Court in the Eastern District of Virginia. ECF No. 18 at 8.

### B. Procedural History

On November 11, 2025, borrower Yina Chen initiated this action in the Northern District of California on behalf of herself and a class of similarly situated plaintiffs. ECF No. 1. On February 23, 2026, Malina Eckfeldt filed a first amended complaint ("FAC") designating her named plaintiff and representative of the putative class, including a California subclass. ECF No. 15. The FAC brings four claims against Aidvantage relating to Aidvantage's alleged disclosure of "nonpublic personally identifiable information" to third parties. *Id.* These claims include a violation of the Electronic Communications Privacy Act ("ECPA") on behalf of the nationwide class as well as three state law claims on behalf of the California subclass: violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632, and invasion of privacy under the California Constitution. *Id.* On March 25, 2026, Aidvantage moved to transfer this action to the Eastern District of Viriginia, seeking to enforce the mandatory forum-selection clause in its Term of Use under 28 U.S.C. § 1404(a). ECF No. 18. Eckfeldt opposed on April 22, 2026. ECF No. 23. Aidvantage replied on May 13, 2026. ECF No. 25.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

## III. LEGAL STANDARD

Even when venue is permissible in a given district, a defendant may move to transfer the

action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where the action may have been brought or . . . to which all parties have consented." 28 U.S.C. § 1404(a); *Earth Island Ist. v. Quinn*, 56 F. Supp. 3d. 1110, 1115–7 (N.D. Cal. 2014). On motion to transfer, and upon determination that the transferor venue is proper, courts must determine if the venue would remain proper in the proposed transferee district. *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1118 (N.D. Cal. 2025). If so, the court weighs several private and public interest factors, which may include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Ordinarily, the party moving to transfer bears the burden of justifying it. *Id.* at 499.

Where parties have entered into an agreement containing a valid forum-selection clause, "Section 1404(a) provides a mechanism for enforcement of [the clause]," *Atlantic Marine Const. Co. v. U.S. Dist. For the W. Dist. of Tx.*, 571 U.S. 49, 59 (2013), and the burden shifts to the plaintiff to show that the court should not transfer the case to the proscribed venue, *id.* at 63. In evaluating whether to enforce a forum-selection clause and transfer the action, the court adjusts its analysis in three ways: (1) the plaintiff's choice of forum merits no weight; (2) a court will not "consider arguments about the parties' private interests"; and (3) the party who "flouts" a forum-selection clause will not be entitled to the choice-of-law rules of the original forum. *Id.* at 63–64. To successfully oppose a motion to transfer pursuant to a mandatory forum-selection clause covering the parties' dispute, a plaintiff must demonstrate either that (1) the clause is invalid, or (2) the public interest factors make transfer inappropriate. *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 834 (N.D. Cal. 2018) (citing *Atlantic Marine*, 571 U.S. at 579, 582). The public interest factors include: "[1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a

diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty. *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 948 (S.D. Cal. 2019) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Valid forum-selection clauses "should be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63 (citation modified). Thus, the party seeking to avoid a forum-selection clause carries a heavy burden to prove it is invalid. *Ponomarenko*, 287 F. Supp. 3d at 835.

## IV. DISCUSSION

Defendant Aidvantage moves to transfer this action to the Eastern District of Virginia, pursuant to the forum-selection clause within its online Terms of Use agreement. ECF No. 18. Eckfeldt opposes the motion, arguing that the forum-selection clause is invalid and therefore unenforceable. ECF No. 23.

### A. Section 1404(a) Prerequisites

Section 1404(a) is the appropriate vehicle for a transfer motion from one district where venue is proper to another. *See Jackson*, 772 F. Supp. 3d at 1118; *Atlantic Marine*, 571 U.S. at 55; *Earth Island Ist.*, 56 F. Supp. 3d. at 1114. "[T]he action may not be transferred to a district or division that would be an improper venue, that would lack subject matter jurisdiction, or in which defendants would not be subject to process and within the personal jurisdiction of the transferor court." *Fodor v. Berglas*, No. 94-CV-4761, 1994 WL 822477, at *2 (C.D. Cal. Dec. 27, 1994). The parties do not dispute that venue is generally proper either in this district or in the Eastern District of Virginia. In general, venue is proper in any judicial district where a defendant resides, if all defendants reside in the same state, 28 U.S.C. § 1391(b)(1); where a "substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2); or, if nowhere else, where a defendant is subject to the courts' personal jurisdiction, 28 U.S.C. § 1391(b)(3).

First, venue is generally proper in this district under Section 1391(b)(2) because Eckfeldt is a resident of Redway, California who accessed her online Aidvantage account from California, so a substantial part of the events giving rise to her claims occurred in the Northern District of

California. ECF No. 18 at 14; ECF No. 23 at 14. Second, Aidvantage correctly argues that the action could have been brought in the Eastern District of Virginia under 28 U.S.C. §§ 1391(b)(1) because it is headquartered there. ECF No. 18 at 14. Moreover, because its principal place of business is in MacLean, Virginia, it is "at home" in the state and subject to personal jurisdiction there. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); Fed. R. Civ. P. 4(k)(1)(A); Va. Code Ann. § 8.01-328.1. Section 1404(a) is therefore an appropriate vehicle for transfer here, assuming the forum selection clause is valid and the factors support transfer.

### B. Validity of the Forum Selection Clause[1]

Eckfeldt argues that the forum-selection clause is unconscionable and therefore unenforceable. ECF No. 23 at 10–14. Aidvantage contends that Eckfeld has not proven the forum-selection clause is unconscionable or otherwise invalid because it would not deprive her of her day in court or contravene a strong public policy of California. ECF No. 25.

Generally, a forum-selection clause may be unenforceable on one of three grounds: (1) if the inclusion of the clause in the agreement was the product of fraud or overreach; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; or (3) if enforcement would contravene a strong public policy of the forum in which the action was brought. *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 457 (9th Cir. 2007). A court may also invalidate a contract or agreement, such as a forum-selection clause, under general contract defenses such as fraud, duress, or unconscionability. *Iravanian v. Translations.com, Inc.*, 687 F. Supp. 3d 871, 877 (N.D. Cal. 2023) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

Courts may therefore refuse to enforce a provision of a contract, such as a forum-selection

[1] Courts will not enforce forum selection clauses absent language indicating the parties' intent that the selected forum be mandatory or exclusive. *See Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). Here, this requirement is satisfied: any user who accepts the terms and creates an online account agrees to "submit to the personal and exclusive jurisdiction and venue of the state and federal courts located within Fairfax County, Virginia," which is located within the transferee district. ECF No. 18 at 8; *see Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) ("[I]n cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required *exclusive* jurisdiction." (emphasis in original)).

clause, if they find it was unconscionable "at the time it was made." Cal. Civ. Code § 1670.5(a). Unconscionability amounts to an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other parties." *Iravanian*, 687 F. Supp. 3d at 877 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). A contract provision is unconscionable if it is both procedurally and substantively unconscionable, and "[t]he unconscionability inquiry employs a sliding scale—the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Iravanian*, 687 F. Supp. 3d at 877 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). In California, the standards governing unconscionability are the same for forum-selection clauses in arbitration and non-arbitration contexts. *Tompkins v. 23andMe*, 840 F.3d 1016, 1029 (citing *Sanchez*, 61 Cal. 4th at 912).

**1. Procedural Unconscionability**

Procedural unconscionability has two elements, oppression and surprise, which concern inequality in the parties' bargaining when they entered into the contract. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). "Oppression can be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." *Iravanian*, 687 F. Supp. 3d at 878 (quoting *Lim*, 8 F.4th at 1000). Circumstances which may indicate oppression include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*Iravanian*, 687 F. Supp. 3d at 878 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (2015)).

Moreover, surprise depends upon "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the . . . form drafted by the party seeking to enforce the disputed terms." *Cir. City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (citing *Stirlen v.*

*Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)). Whether terms are hidden may depend upon the legibility, prominence, and location of the text or other choices made by the drafting party. *See, e.g.*, *Iravanian*, 687 F. Supp. 3d at 878; *Lim*, 8. F.4th at 1001.

A contract of adhesion is a "standardized form offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Iravanian*, 687 F. Supp. 3d at 878 (quoting *Lim*, 8 F.4th at 1001). Though the existence of a contract of adhesion "can establish some degree of procedural unconscionability," it is not per se unconscionable. *Lim*, 8 F.4th at 1000 (citation modified). "Clickwrap" agreements are contracts of adhesion wherein a user is presented with a website's Terms of Use and must affirmatively click "I agree" in order to continue using the website's services. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). "[T]here is no per se rule of validity or invalidity" for clickwrap electronic agreements. *In re Facebook Biometric Privacy Litigation*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) (citing *Nguyen*, 763 F.3d at 1176).

Although it is a close case, the Court finds the circumstances here to be oppressive. Eckfeldt had no choice in the assignment of Aidvantage as her federal student loan servicer. *See* ECF No. 15 ¶ 35. Aidvantage sent Eckfeldt many emails encouraging her to register online to view loan details and other "important information," "find the documents we send to you securely," and avoid having to search for email communications. ECF No. 15 ¶ 37. According to Eckfeldt, Aidvantage's messaging, coupled with "feelings of stress, anxiety, and shame" and the urgency of making loan payments to avoid accruing interest, exerts pressure on student borrowers to register for an online account. ECF No. 23 at 8, 11–12; ECF No. 15 ¶ 3. Unlike many services gated by clickwrap contracts—like those in *Facebook*—Aidvantage's services were neither voluntary nor recreational; she was a "captive student loan borrower." ECF No. 23 at 11.

Aidvantage argues that any oppression is counteracted by the availability of other means to make payments, such as by mail, phone, or enrolling in autopay, but the argument is unavailing. ECF No. 25 at 7. The central inquiry is whether Eckfeldt was given a meaningful opportunity to opt out of the Terms of Use agreement while still effectively managing her student loans. *Cir. City Stores*, 353 F.3d at 1106 (describing oppression as "springing from an inequality of

bargaining power that results in no real negotiation and an absence of meaningful choice" (citation modified)). Directing borrowers to manage all account functions through the online portal, the emails from Aidvantage do not suggest that there are alternative methods to manage student debt. ECF No. 15 ¶ 37. Rather, they strongly suggest that account registration is necessary to effective loan management. *Id.* Moreover, Aidvantage has not attempted to show that Eckfeldt was made aware of the alternative payment methods before she registered for an online account. Eckfeldt has sufficiently demonstrated that she was not given a meaningful opportunity to opt out of the Terms of Use, so the oppression element is satisfied.[2]

Next, the Court considers surprise. Eckfeldt argues that no visual markers call attention to the forum-selection clause within Aidvantage's Terms of Use. ECF No. 23 at 12. Indeed, the text of forum-selection clause was "[b]uried at the bottom of a small scroll box, in tiny font, and without subheadings." ECF No. 23 at 12. Courts have repeatedly found such features to support a finding of surprise. *See Iravanian*, 687 F. Supp. 3d at 878 (finding unfair surprise where "the arbitration agreement is located at the end of more than 40 individual paragraphs with no visual markers to call Plaintiff's attention to it, and Plaintiff was not required to sign or initial that specific provision"); *Lim*, 8. F.4th at 1001[3] (finding unfair surprise where delegation clause was located in the middle of more than nine pages of single-spaced, 10-point font, "[n]othing in the text of the agreement called [the plaintiff's] attention to" it, and the plaintiff was also not required to sign or initial the provision). The Court is persuaded that the surprise element is satisfied.

The circumstances surrounding Eckfeldt's assent to the forum-selection clause—the pressure exerted on Eckfeldt to induce her to create an online account and the relative surprise of the forum-selection term—demonstrate both oppression and surprise; therefore, the Court finds

---

[2] Eckfeldt eventually enrolled in autopay, but only after she had created an online account and agreed to the Terms of Use. ECF No. 16 ¶¶ 7, 9. She also made a loan payment over the phone, but neither party provides the date(s) on which she did so. ECF No. 23 at 12, n.1; ECF No. 25 at 8; *see* ECF No. 16.

[3] Aidvantage would distinguish *Lim* because it arose in a "materially different" context, but Aidvantage does not explain how. ECF No. 25 at 8. Aidvantage also attempts to rely on the fact that *Lim* concerned an arbitration agreement, *id.*, but the standard for unconscionability under California law is the same in both arbitration and non-arbitration contexts. *Tompkins*, 840 F.3d at 1029 (citing *Sanchez*, 61 Cal. 4th at 912).

evidence of at least "a moderate degree of procedural unconscionability." *Perez v. Ecolab Production LLC*, No. 5:24-cv-01954-SSS-SPx, 2025 WL 2427968 at *3 (C.D. Cal. 2025) (quoting *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1094 (9th Cir. 2024)).

**2. Substantive Unconscionability**

Substantive unconscionability concerns the overall fairness of a contract's terms, *Lim*, 8. F.4th at 1001, focusing on whether they produce "overly harsh or one-sided results," *Sanchez*, 61 Cal. 4th at 910, or are "unreasonably favorable to the more powerful party," *Iravanian*, 678 F. Supp. 3d at 879 (quoting *Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1261 (9th Cir. 2017)).

In 2015, the Supreme Court of California held that the standard for unconscionability is the same in both arbitration and non-arbitration contexts. *Sanchez*, 61 Cal. 4th at 912. It resolved a split within the appellate courts, clarifying that the varied criteria for evaluating for substantive unconscionability in either realm—e.g., shocks the conscience, overly harsh or one-sided, and unduly oppressive—were merely different articulations of the same legal standard. *Id*. at 913 (holding that "all the formulations [to capture the notion of substantive unconscionability] mean the same thing"). Meanwhile, in *Smith, Valentino & Smith, Inc. v. Superior Court*, the Supreme Court of California held that in enforcing forum-selection clauses in negotiated, free, and voluntary contracts, "'[m]ere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." 17 Cal.3d 491, 496 (1976) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 16–18 (1972)).

In the years since *Smith, Valentino*, some California Courts of Appeal extended the California Supreme Court's holding to enforce non-arbitration forum-selection clauses in contracts of adhesion. *Tompkins*, 840 F.3d at 1028; *see, e.g.*, *Intershop Commc'ns v. Super. Ct.*, 104 Cal. App. 4th 191 (2002). In doing so, these courts do not consider parties' individual circumstances, including expense or inconvenience to the parties, but only consider whether the selected forum would be "unavailable or unable to accomplish substantial justice." *Id*. at 199. Adhesive forum-selection clauses were enforced "'as long as the clause provided adequate notice to the party that

he was agreeing to the jurisdiction cited in the contract.'" *Id.* at 201–02 (citation modified).[4] Other appellate courts continued to "[consider] expense and inconvenience caused by a forum selection clause and [conclude] that these factors made the clause unconscionable." *Tompkins*, 840 F. 3d at 1028; *see, e.g.*, *Aral v. EarthLink, Inc.*, 134 Cal. App. 5th 544, 561 (2005); *Bolter v. Super. Ct.*, 87 Cal. App. 4th 900 (2001).

In *Tompkins*, the Ninth Circuit predicted that the Supreme Court of California would adopt the former approach wherein forum-selection clauses in contracts of adhesion are only unenforceable if they are "unavailable or unable to accomplish substantial justice" or provide inadequate notice to a party that he has agreed to the cited jurisdiction. *Tompkins*, 840 F.3d at 1029. "Mere inconvenience or additional expense does not make the locale unreasonable" under *Tompkins*. *Id*. Five years later, however, the issue was again presented to the court in *Lim*, which concerned a forum selection clause in an adhesive arbitration agreement in the employment context. 8 F.4th at 1002–03. While acknowledging the holding from *Tompkins* that "'inconvenience and expense' of a forum alone is not enough to treat a forum-selection clause as unenforceable," the Ninth Circuit held that the plaintiff's "more than mere[ly] inconvenient" financial circumstances and a one-sided venue provision were sufficient to show that a forum selection clause in an arbitration agreement was substantively unconscionable. *Id*. at 1003. *Lim* held that "'[t]o assess the reasonableness of the place and manner provisions in [an] arbitration clause, [the court] must take into account the respective circumstances of the parties.'" *Id.* (quoting *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)); *see also Bolter*, Cal. App. 4th at 909.

Predictably, Aidvantage argues that *Tompkins* should control while Eckfeldt would rely on

---

[4] This notice requirement appears to have grown out of the requirement of mutual consent to a contract term, without which no contract was formed in the first place. *See, e.g.*, *Hunt v. Superior Ct.*, 81 Cal. App. 4th 901, 908 (2000) (explaining that "when the clause does not give adequate notice to the defendant that he is agreeing to the jurisdiction cited in the contract, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to such clause thus exists" (citation modified)). Nonetheless, it was characterized by the Ninth Circuit in *Tompkins* as an element of substantive unconscionability. 840 F.3d at 1029; *id*. at 1024 n.2 (noting that the opinion does not address procedural unconscionability). It is also not contested by the parties here.



United States District Court
Northern District of California

*Lim.* ECF No. 25 at 8–9; ECF No. 23 at 13–14.[5] But even under *Lim*, Eckfeldt must show something more than "inconvenience and expense." 8 F.4th at 1002. She must show that "the forum selected would be unavailable or unable to accomplish substantial justice" based on her factual circumstances. *Id.* (quoting *Tompkins*, 840 F.3d at 1027). This she has not done.

In *Lim*, the plaintiff-employee persuaded the court that he would be burdened beyond "mere inconvenience" by the forum-selection clause at issue because he "take[s] home about $600 a week and has joint custody of his minor daughter who spends half of her time with him," he "cannot afford to travel to Dallas, Texas and leave his daughter and work for a significant period of time," and he would lose opportunities for future work if he did so. 8 F. 4th at 1003.

Eckfeldt has not made a comparable showing. In a conclusory fashion, she argues that "[a] provision requiring a college student (or recent graduate) to litigate a case involving the disclosure of her private, personally identifiable information thousands of miles from her home forum constitutes substantive conscionability." ECF No. 23 at 13–14. But she offers no further evidence or explanation concerning exactly how *she* would be burdened by litigating in Virginia. *See generally* ECF No. 23. Moreover, as Aidvantage points out, Eckfeldt will likely benefit from remote proceedings and electronic discovery concerning claims purely pertaining to online activities.[6] ECF No. 25 at 10. Eckfeldt has not shown that "the forum selected would be unavailable or unable to accomplish substantial justice." *Lim*, 8 F.4th at 1002.

Eckfeldt has shown some procedural unconscionability and no substantive unconscionability. Therefore, the Court finds that the forum-selection clause is not

---

[5] To be precise, Eckfeldt relies on this Court's decision in *Iravanian*, which relied on *Lim*. 687 F. Supp. 3d at 879–880.

[6] Aidvantage also claims that because Eckfeldt "is a putative class representative on a nationwide basis," she "cannot plausibly portray the ordinary burdens of interstate litigation as uniquely oppressive," ECF No. 25 at 9–10. (citing *LaGuardia v. Designer Brands, Inc.*, No. 19-cv-1568, 2020 WL 2463385 at 8 (S.D. Cal. 2020); *Neff v. Towbin Dodge LLC*, No. 20-cv-00261, 2020 WL 6802188 at 4 (E.D. Cal. 2020)). This argument is unpersuasive, however, because Eckfeldt brings three state law claims on behalf of a California subclass in addition to her nationwide ECPA claim. ECF No. 16. There is at least some indication that "class members other than [herself]" would have to travel great distances to litigate in the Eastern District of Virginia. *Neff*, 2020 WL 6802188 at 4 (citing *Mina v. Red Robin Int'l, Inc.*, No. CV 18-9472, 2020 WL 4037163 at 3 (C.D. Cal. 2020)). Nonetheless, Eckfeldt has made no showing that such travel would burden either herself or the other class members.

unconscionable. *Clark v. Beauty Systems Group LLC*, No. EDCV 19-258 JGB (KKx), 2019 WL 4148180 at *6 (C.D. Cal. 2019) ("Given the lack of substantive unconscionability and the moderate level of procedural unconscionability present, the Court finds Plaintiff has failed to show the [agreement] is, on the whole, unconscionable.").[7]

**C. Public Interest Factors**

Where a defendant moves to transfer an action under Section 1404(a) to enforce a valid forum-selection clause, the court considers only the public interest factors. *Atlantic Marine*, 571 U.S. at 63–64. Those most relevant here include the court's familiarity with the governing law, the local interest in the lawsuit, and relative court congestion. *Bos. Telecommc'ns Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009).

To start, Aidvantage argues that Virginia would be more "at home" in applying the requisite substantive law for this case, citing a Virginia choice of law clause within the Terms of Use. ECF No. 18 at 16 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Eckfeldt responds that if the clause were enforced, a Virginia district court would be tasked with adjudicating three separate claims under California law brought on behalf of California plaintiffs—one of which is a claim under the California Constitution. ECF No. 23 at 18. Aidvantage claims that federal courts routinely apply other states' law to reason that the Eastern District of Virginia should adjudicate California statutory and constitutional claims, ECF No. 25 at 13, yet the same logic would apply if California courts were to apply Virginia substantive law pursuant to the Terms of Use's choice of law clause. This factor therefore weighs neither in favor of nor against transfer.

Aidvantage likewise contends that Virginia has an interest in having localized controversies decided at home, but the same can be said for California. Local interest may be established by the party moving to transfer when the party is "at home" in the target forum, *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 8:18-cv-01851, 2019 WL 1449641 at *6 (C.D.

---

[7] Eckfeldt also argues that the forum-selection clause violates California's public policy against enforcement of unconscionable contracts. ECF No. 23 at 11. Because she has not shown that the contract is unconscionable, she has likewise failed to show that it violates public policy.

Cal. 2019), or when the "events at issue took place there," *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009). In evaluating this factor, the Court need only determine whether the transferor forum has "an identifiable local interest in the controversy," not whether its interest is greater than that of the target forum. *Bos. Telecomms. Grp.*, 588 F.3d at 1212 ("With this public interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." (citation modified)).

Both Virginia and California have a localized interest in deciding the case. That is, Eckfeldt (like the other members of the California subclass) is a resident of California, and has accessed her online account from California, leading to the alleged disclosure of her nonpublic personal information. ECF No. 23 at 18–19. Meanwhile, Aidvantage's principal place of business is McLean, Virginia, and as such, its "challenged systems, records, and personnel are centered there." ECF No. 25 at 12. Because California has "an identifiable local interest in the controversy," this factor weighs against transfer. *Bos. Telecomms. Grp.*, 588 F.3d at 1212.

Finally, although the relative congestion of the transferor forum merits little weight, this factor favors transfer. ECF No. 18 at 15–16; *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984)) (noting that "administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer"). Aidvantage presents evidence that there are more weighted filings in the Northern District of California than the Eastern District of Virginia and that the lesser degree of congestion would likely promote a speedier resolution to this action. ECF No. 18 at 15–16; ECF No. 17-2.[8] This factor weighs slightly in favor of transfer.

Therefore, because a valid forum-selection clause "should be given controlling weight in

---

[8] Aidvantage filed a request for judicial notice of certain exhibits in support its motion to dismiss. ECF No. 17. A court may take judicial notice of any fact that may be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). "It is appropriate to take judicial notice of [] information . . . made publicly available by government entities." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The Court thus takes judicial notice of Exhibit E, the "U.S. District Court – Judicial Caseload Profile" for the Northern District of California and Eastern District of Virginia for the reporting period ending June 30, 2025.

all but the most exceptional cases," *Atlantic Marine*, 571 U.S. at 60, Eckfeldt has not carried her burden to establish that the public interest factors weigh against transfer, and the Court will enforce the forum-selection clause. *Id*. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

**CONCLUSION**

For the foregoing reasons, the Court grants Aidvantage's motion to transfer. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Virginia.

**IT IS SO ORDERED.**

Dated: November 16, 2026

JON S. TIGAR
United States District Judge